## Case No. 3,753.

### DELANO v. SCOTT.

[Gilp. 489;[1] 1 Robb. Pat. Cas. 700; 20 Jour. Fr. Inst. 47.]

District Court, E. D. Pennsylvania. May 27, 1835.

SCIRE FACIAS TO REPEAL PATENT — WHEN ISSUED — FRAUD — RULE TO SHOW CAUSE — EFFECT OF DECREE — ANTICIPATION — INVENTION — INFRINGERS.

1. The provisions of the sixth section of the act of 21st February, 1793 [1 Stat. 322], are intended to declare the defence that shall be available to a party charged by a patentee with a violation of his right.

2. The provisions of the tenth section of the act of 21st February, 1793, apply only to cases in which a patent has been obtained by fraud, surreptitiously, or by false suggestions, and are intended to protect the public from imposition.

3. Though a patentee believes himself, bonâ fide, to be the original inventor of the improvement patented, yet the fact of his not being so, if it does not constitute a false suggestion in obtaining it, appears to be a sufficient ground for repealing it.

4. The mere existence of a previous patent or specification of an improvement is not sufficient to establish the fact of fraud in a subsequent patentee of a similar improvement; actual knowledge of it must be proved.

5. If there be a false suggestion in any of several material facts set forth in a specification, the patent is invalid.

6. An order, on a rule to show cause why a scire facias should not issue to repeal a patent, is merely a preliminary proceeding, and does not determine the question of the validity of the patent.

7. An exemplification of a patent afterwards surrendered and cancelled, may be given in evidence to show that an improvement, subsequently patented, is not original.

8. A mere workman, employed by a person who is not the patentee, to make parts of a patented machine, is not liable to a penalty under the provisions of the act of 21st February, 1793.
[Explained in Morse v. Davis, Case No. 9,855. Applied in United Nickel Co. v. Worthington, 13 Fed. 393. Cited in Estes v. Worthington, 30 Fed. 465; Young v. Foerster, 37 Fed. 204.]

9. A mere difference in the manner and form of applying an invention, which is the same in

[1] [Reported by Henry D. Gilpin, Esq.]

principle with one previously used, will not justify a new patent.

10. A judgment against a patentee, on a scire facias issued to obtain a repeal of a patent, vacates the same; but a judgment in his favour will not prevent his right being contested in a suit he may subsequently institute for its violation.

This was a suit brought by scire facias, for the purpose of repealing a patent obtained by the defendant [John Scott] from the United States, under which he claimed the sole and exclusive right of using and vending to others, certain improvements in making iron chests or safes. This patent the plaintiff [Jesse Delano, Jr.] alleged he had obtained surreptitiously and on false suggestions. The original proceedings in the case were as follows: On the 29th October, 1833, the plaintiff appeared before the district judge of the United States for the eastern district of Pennsylvania, and on his oath declared and complained: That the defendant, who was a resident of the district, had, on the 12th November, 1830, and within three years from this application, as well as within three years from the issuing of the patent in question, obtained the same from the United States; that it purported to secure to him the right above stated for fourteen years from the date thereof; that it was obtained by the defendant surreptitiously and on false suggestions; that he was not the true inventor of the improvements described in it; and therefore praying that a rule might be granted, calling on the defendant to show cause why process should not be issued, for the purpose of repealing the patent, according to the provisions of the act of congress, in such case made and provided.

Mr. Perkins, for plaintiff.
Mr. Earle, for defendant.

HOPKINSON, District Judge. The affidavit of the complainant in this case was made on the 29th day of October, 1833, and set forth, that the defendant, John Scott, within three years antecedent to the date of the said affidavit, to wit, on the 12th day of November, 1830, had obtained, from the United States, a patent, to secure to him for fourteen years the sole and exclusive right to vend to others certain improvements in making iron chests or safes; that this patent was obtained by the said Scott surreptitiously and upon false suggestions; and that the said Scott is not the true inventor or discoverer of the said improvements. Upon this affidavit a rule was granted, calling upon the said Scott to show cause why process should not issue to repeal the said letters patent. The rule was duly served on the defendant, and he has appeared, by his counsel, to show cause against the issuing of the process demanded.

The affidavit contains two allegations, distinctly made: 1. That the patent in question was obtained surreptitiously and by false suggestions. 2. That the patentee is not the true inventor or discoverer of the improvement patented. To maintain these allegations, the complainant has given in evidence a patent granted to himself for the same improvements, as he avers, dated on the 7th March, 1826; and also the depositions of several witnesses to prove the identity, at least, substantially, of the improvements patented in the two patents, and also to show the fraud of the defendant in obtaining his patent. These witnesses swear, in general, that the improvements are substantially the same, and particularly describe both. They also testify, that the defendant, Scott, was employed by the complainant as a workman in doing the iron work of these chests, for about two years, having, during that time, had free access to all parts of the work carried on in the shop, and there become acquainted with the business of making iron chests and safes, and with the peculiar method of saturating the wood with certain materials, so as to render it incombustible. Other circumstances are detailed, which need not be repeated now, to show that the patentee got his whole knowledge of the improvements in question by working in the shop of the complainant, and there seeing the manner in which his iron chests were prepared and made. No evidence was produced, on the part of the defendant, to rebut or explain the inference that would be drawn from these facts, to wit, that when he took out his patent he knew that he was not the inventor or discoverer of the improvements he claimed and patented. Nor has he given any testimony of persons skilled in the manufacture of the article in question, to show that his manner of preparing and making these chests is not substantially and truly the same, with that before used and patented by the complainant. If the alleged improvements in both patents are the same, and if the defendant acquired his knowledge of them by working in the shop of the complainant, where they were made, then the whole case of the complainant is made out, to wit, that the defendant is not the true inventor or discoverer of the thing he has patented, and that he did obtain his patent surreptitiously and by false suggestions, by swearing to that which he knew to be untrue. This is not the stage of this proceeding when I am called upon definitively to affirm or deny either of these allegations: they are questions of fact on which the defendant has a right to the opinion and verdict of a jury of his country, on such evidence and arguments as it may hereafter be in his power to offer to them. Having already acted on the opinion, that the matter alleged in the complainant's affidavit was sufficient to grant the rule upon the patentee to show cause why process should not issue against him, to repeal his patent, I have only now to decide whether he has shown such cause, and removed the effect of the complainant's affidavit. I think

he has not done so; on the contrary, he has offered no evidence to repel, or weaken, or discredit the allegations of the complainant, who has strengthened himself by the depositions of several witnesses. I repeat that the whole case is nevertheless open to the defendant; he may reserve his defence for the future inquiry before a jury, and will not then be prejudiced by any omissions on his part, at this incipient hearing, or by any opinion I may express of his case as it now stands.

Some questions of law, on the construction of the tenth section of the patent law of 21st February, 1793, have been mooted in the argument of the case, which I will briefly notice. If I were called to give a construction, for the first time, to this section, I confess I should have some embarrassment to reconcile and satisfy all its parts. But happily this section has been carefully and critically examined, not only by a learned judge of the supreme court of the United States in his circuit (Stearns v. Barrett [Case No. 13,337]), but afterwards by that court itself (Ex parte Wood, 9 Wheat. [22 U. S.] 603). The decisions of that court on the doubtful points in this law, not only bind me by their authority, but entirely satisfy and accord with my own judgment. They give the fullest justice to the parties interested, while they do no violence to any part of the act, but make all its provisions consistent with each other, and with the general principles of justice and law. The following points seem to me to be the settled construction of the section in question: 1. That the proceeding given by it, to procure the repeal of a patent, applies only to cases in which the patent has been obtained by fraud, surreptitiously, by false suggestions, by some wilful misrepresentation and deception. The mere fact that the patentee was not the original inventor of the thing patented, is not such a false suggestion as is contemplated by the act, although there are some words in it which seem to favour that construction, provided that the patentee bonâ fide believed himself to be the true inventor, when he applied for and received his patent, and did not know of any antecedent use and invention of the thing claimed by him. There must be an intended deception and fraud upon the government and the public; a wilful wrong to the true inventor. 2. That the hearing, on the return of the rule to show cause, is merely an initial proceeding, for a more full and deliberate examination and trial of the cause of complaint, if, in the opinion of the judge, there shall be a good and sufficient ground laid for such further examination; that the order of the judge, on this hearing, cannot be that the patent is invalid, but only that process shall issue for a trial of its validity; and it is upon such trial that the question of validity is to be determined, or an issue to be made between the parties, and the letters patent to be repealed by the judgment of the court, if the issue shall be decided against the patentee. 3. That on the return of the process issued on the rule, the parties will make up their issue according to the case in controversy; and the trial will be by a jury or the court, according as the issue shall present a question of fact or of law. The decision against the patentee will repeal and vacate his letters patent, but a decision of this issue in his favour will give no strength or confirmation to them, to prevent his right from being contested and tried in any suit he may afterwards bring for a violation of it. The summary proceeding under the tenth section was probably given to protect the public from manifest frauds, in taking out patents, (the fees of office being no check,) for known and common ti..ngs. The imposing appearance of the patent would deceive the timid and ignorant, who might believe it was conclusive evidence of right, or who might be unable or unwilling to take upon themselves the hazard, and the certain loss of time and money, in which they would be involved by litigation. They would, therefore, wisely prefer to pay something for the peaceable use of the pretended invention. Such frauds have been, more than once, successfully practised.

It is ordered, that the rule in this case be made absolute; and that process issue, in nature of a scire facias, to the patentee, to show cause why the patent should not be repealed, with costs of suit.

On the 2d May, 1834, the writ of scire facias issued, to which the defendant subsequently pleaded not guilty, with leave to give the special matter in evidence.

On the 27th May, 1835, the case came on for trial before Judge HOPKINSON and a special jury. It was argued by Perkins, for plaintiff, and Earle and Dallas, for defendant.

Mr. Perkins, for plaintiff.

This suit is a proceeding under the tenth section of the act of congress of 21st February, 1793 (1 Story's Laws, 303 [1 Stat. 322]), directing the manner in which a patent may be repealed, if it has been obtained surreptitiously or upon false suggestions. The plaintiff invented a mode of making iron chests so as to render them incombustible. On the 7th March, 1826, he took out a patent for his improvements, which are detailed in his specification. In October, 1827, Scott, the defendant, came to work in the plaintiff's shop, who was then making iron chests according to his patent. He remained working in this shop until September, 1829, when he went to Ohio. He returned to New York in about a year. The plaintiff had heard in the meantime that he had been making iron chests; he charged him with it, but he denied it. He was then allowed to go over the factory. He went away, declining employment by Delano, and came to Philadelphia where he set up a manufactory of iron chests

the same as those made by Delano. In October, 1830, he took out his patent for them, making the usual affidavit. It is to repeal this patent, as having been obtained surreptitiously and by false suggestions, that this proceeding has been instituted.

The affidavit of Scott, made before Alderman Badger on the 29th October, 1830, was then read. In this he swears that he believes himself to be the true and original inventor of the improvements within specified and described; and that the same, to the best of his knowledge and belief, had not been known or used either in this or any foreign country.

The counsel for the plaintiff then stated in detail the improvements claimed by Scott, amounting to ten. He then offered a certified official copy of a patent taken out by the plaintiff, which was afterwards surrendered and cancelled on account of a defective specification; and a new patent obtained on 13th August, 1834. This cancelled patent was offered to show that Scott's first specification had been previously patented; it was to be followed by evidence of its use in the plaintiff's shop when Scott worked there.

Earle and Dallas, for defendant.

We object to this evidence. The paper is imperfect. We should know when it was cancelled; how and for what defect or reason. If the plaintiff can show that he had used potash in New York, and that Scott knew it, that is sufficient without this paper. He should first show that Scott knew the existence of this paper.

Mr. Perkins, for plaintiff, in reply.

By the third section of the act of 21st February, 1793 (1 Story's Laws, 302 [supra]), "certified copies are competent evidence in all courts when any matter or thing, touching a patent right, shall come in question."

Judge HOPKINSON delivered the following opinion:

I admit the evidence. The plaintiff is to prove two things: 1. That Scott is not the inventor of the improvement in question. 2. That he obtained his patent surreptitiously. To prove the second point, he must show knowledge of the defendant, that he was not the inventor; though he need not do so to prove the first. This evidence is good for the former purpose, that is, to show he was not the original inventor. The copy offered proves the existence of the original in the department of state.

Mr. Perkins, for plaintiff, in continuation.

All the specifications of Scott's patent show that none of them were his inventions. A great number of witnesses examined all show that these improvements were in Delano's patent; that they were used by him before Scott's application for a patent; and that Scott had full knowledge that they were so used. They further prove that Scott's first knowledge of the business was obtained in Delano's shop; he was entirely ignorant of every part of it when he came there.

Thomas Archbold, being offered by the plaintiff as a witness, was sworn on his voir dire. He said he had made springs to the bolt, such as are described in Scott's patent.

Earle and Dallas, for defendant, object.

The witness is not competent; he has an interest in the event of the suit. If, by this verdict and judgment, Scott's patent should be affirmed, it might be given in evidence against the witness in a suit for infringing the patent; he has, therefore, an interest to destroy it in order to secure himself. Scott might sue on his patent, even if the verdict and judgment here should declare it invalid. Agents who vend a patented article are liable to damages. The witness has admitted that he has violated the patent; and is, therefore, liable for damages. He cannot be permitted to take away from Scott the capacity to sue him. Hayes v. Grier, 4 Bin. 83; Conrad v. Keyser, 5 Serg. & R. 371.

The witness, being called back by the judge, says, that he has made these bolts in the shop of Mr. Delano, as one of his workmen.

Judge HOPKINSON stopped the counsel for the plaintiff, who was about to reply.

On general principles I should think the evidence admissible. To exclude it, the interest of the witness should be more certain and immediate; not so contingent, remote, and dubious. The possibility that an action might be brought against him, in case his testimony should not prevail, or the tendency of his testimony to render his liability less probable, would not exclude him; it may affect his credit, but not his competency. 1 Starkie, Ev. 86, 88. But it is clear to me that the witness would not be liable to any damages for the violation of Scott's patent, should it be found to be a good and valid one. He is not within the terms of the fifth section of the act. It is there enacted, "that if any person shall make, devise, and use, or sell the thing so invented, he shall forfeit and pay to the patentee." In my opinion, this description does not, and was never intended to, embrace every workman who may be employed in making parts of a patented machine; nor one who may sell them as the shopman or clerk of another. The maker and seller intended by the act, is the principal who employs these subordinate agents; the person for whom, by whose direction, and on whose account, the machines are made and sold; the person who receives the profit of the sale; he is the seller and the maker. It is he who claims title and property in the thing, and who undertakes to transfer it to the purchaser. The workmen employed by him for stipulated wages, have nothing to do with his right, or with his invasion of the rights of another. They work under his direction, and sell on his account. There may be a dozen or more mechanics employed in making one machine; and several attending in the shop where it is sold. Is each of these liable for damages, that is, to forfeit and pay to the patentee a sum

at least three times the price for which the patentee has usually sold his invention? If this be the law, the patentee would recover for every invasion of his right, for every machine made and sold, not three times but fifty or an hundred times the price of it; although no one of the defendants made the machine, but it was the joint work of all. The witness now offered, and objected to, made nothing but the spring bolts of the chests. So as to the persons who may sell it, as the shopmen or clerks of the owner. In common parlance, as well as in the understanding of the law, the seller of an article is the owner for whom it is sold; not the man or boy in the shop who delivers it to the buyer and receives his money. If sold on credit, the buyer becomes the debtor of the owner, of the master of the shop, as the seller.

Mr. Perkins, for plaintiff.

The evidence being closed on both sides, the case was argued by the counsel for the plaintiff, who cited Odiorne v. Winkley [Case No. 10,432]; Stearns v. Barrett [Id. 13,337]; Evans v. Eaton [Id. 4,559]; Id., 3 Wheat. [16 U. S.] 454; Ex parte Wood, 9 Wheat. [22 U. S.] 603.

Earle and Dallas, for defendant.

The evidence of the case shows, that some of the improvements introduced by Scott, were new and useful; but the main question is not, whether he was or was not the inventor of them or any of them; but whether he has falsely and surreptitiously taken a patent for that of which he then knew he was not the inventor. Evans v. Eaton [supra].

Judge HOPKINSON delivered the following charge to the jury:

The issue you are now trying, is made under the provisions of the tenth section of the act of 21st February, 1793. The question is on the repeal of the patent granted to the defendant; you will observe that a patent may also be annulled under the sixth section of this act. By the terms of that section, if the specification of the patentee does not contain the whole truth relative to his discovery; or contains more than is necessary, for the purpose of deceiving the public; or if it was not originally discovered by the patentee; or he had surreptitiously obtained a patent for the discovery of another person, judgment shall be rendered for the defendant, and the patent shall be declared void. Under the tenth section, the patent will also be repealed, if the patentee was not the true inventor of the thing; or had obtained the patent surreptitiously. These sections, however, are essentially different in their objects and provisions. The sixth section declares the defences that shall be available for a party against whom a patentee has brought suit for the invasion of his right; but no process or means are given for the examination of a patent right, how-

ever false and fraudulent it may be, if the patentee will be content to forbear to bring a suit against those who use it. He may thus avoid all examination of his right, and he may go on imposing upon the ignorant or timid, and lay his unjust contributions upon them. A case is recorded of a patent for using the common stone coal in a common blacksmith's forge. The patentee went through the country exhibiting his parchment patent with the great seal of the department of state, and the signatures of the high officers of government appended to it. This would naturally alarm an ignorant smith, and as the patentee would sell him a right for two or three dollars, or for whatever he could get for it, a prudent man would prefer paying so small a sum, rather than go to law with an adversary apparently so well armed. To protect the public from such impositions, this tenth section was enacted, and gives the power to any person, interested or not in the discovery or the patent, to call upon the patentee for an examination of his right, and have it repealed, if it shall be found that he is not entitled to it. This proceeding, however, must be instituted within three years; for if the public acquiesces for that period in the claim of the patentee, it shall only be questioned by one against whom a suit is brought for a violation of it, when the defendant will always have the benefit of the defence provided for him by the sixth section of the act.

With this explanation of these sections of the patent act, you will inquire whether the specifications contained in Scott's patent, or any of them, are substantially the same with those used in Delano's chests, or in any other chest, French, English or German, antecedent to Scott's patent, and to his claim of invention. I say "substantially," for a difference in the manner or form of applying the invention, if it be the same principle, will not justify Scott's patent. I have also said, "or any of them," for the petition and oath claim all and each of them; and if there be a false suggestion in a material fact, the patent is invalid. So, on another settled principle of law, he must not patent more than his invention, or all is invalid. If you shall think that all or any of Scott's specifications were used before by Delano, or any other person, his patent can give him no title to them.

But you have to inquire into another question here. Did the defendant obtain his patent "surreptitiously or upon a false suggestion?" If he knew that Delano, or any other person, had previously used his pretended inventions, he certainly obtained his patent by falsely suggesting that he was the inventor. An important question on the construction of this section of the act here presents itself: whether the mere fact that the allegation or suggestion of the patentee was false; that is, that in truth he was not the inventor, when he alleged that he was; will be sufficient to warrant a verdict and judgment against him,

repealing his patent in this proceeding: or, whether the complainant must not go further, and show that the defendant knew that he was not the inventor, and of course knew that his allegation was false, and therefore wilfully deceived the government and the public in obtaining the patent. When the application in this case was made to me, in March, 1834, for a rule upon the defendant to show cause why process should not issue to repeal his patent, the question now proposed was not much attended to. The argument was more on the mode of proceeding than the merits of the case. In the opinion I then said, that I considered it to be the settled construction of this section "that the proceeding given by it to procure the repeal of the patent, applies only to cases in which the patent has been obtained by fraud, surreptitiously, by false suggestions, by some wilful misrepresentation and deception. The mere fact that the patentee was not the original inventor of the thing patented, is not such a false suggestion as is contemplated by the act, (although there are some words in it which seem to favour that construction,) provided that the patentee, bonâ fide, believed himself to be the true inventor, when he applied for and received his patent, and did not know of any antecedent use and invention of the thing claimed by him. There must be an intended deception and fraud upon the government and the public; a wilful wrong to the true inventor." On a further consideration of the subject, I am led to doubt the correctness of this opinion; indeed, it is but one of several difficulties which occur, in reconciling the different parts and provisions of this law. The first part of the section unequivocally requires that the oath or affirmation, which is the commencement of the proceeding, the very foundation of the complaint, shall affirm that the patent "was obtained surreptitiously or upon false suggestions." If I were left to give a meaning to these words alone, with nothing more in the act to show the intention of the legislature, I should adhere to the opinion that the falsehood alluded to was a known and wilful untruth, the fraud a surreptitious application, a designed and wilful deception. But when the process has been issued on this affidavit, and the parties appear here, the one to maintain his complaint as set forth in the affidavit, and the other to defend himself against that complaint, which is, that he obtained his patent surreptitiously or by false suggestion, we find the ground of inquiry much widened, and this court is directed to render a judgment for the repeal of the patent, "in case no sufficient cause shall be shown to the contrary, or if it shall appear that the patentee was not the true inventor or discoverer." The manner of obtaining the patent, whether by fraud and falsehood, whether bonâ fide or surreptitiously, is left out of the case, and it is your duty and mine to repeal the patent on the grounds I have mentioned. While this obscurity in the law has brought me to doubt the construction I formerly gave to it, I shall nevertheless instruct you, in your consideration of this case, to take the law to be as I held it on the application for this process. I must presume that the defendant has prepared his defence on the law as I then laid it down, and it would be unjust to place him on a worse footing now. He shall have the benefit of my mistake, if it was one, and the other party will have the opportunity, should it be necessary, to have the question more deliberately argued and decided, by this or another court. For the purposes of this trial you will hold it to be necessary, to justify a verdict against the defendant, that when he applied for and took his patent, he knew that the things, or some of them, that he claimed as his inventions, had been used before, and were not his discoveries.

Knowledge, then, being necessary to bring the defendant under the penalty of this section of the act, we must inquire what the knowledge is that will be sufficient for his condemnation. The complainant, in the first place, insists upon the legal or presumptive knowledge arising from the record of Delano's patent, long before that obtained by the defendant. The record of Delano's patent and its specification could be no notice of his discoveries to Scott, unless there is a substantial identity between the specifications of the two patents. This you will decide. You have them both, and have heard the elaborate arguments of the counsel of the respective parties, affirming and denying this identity. If you shall be satisfied that such identity does exist between the two specifications of Delano and Scott, the question then occurs, whether the record of Delano's patent in the office of the department of state, was such a notice to Scott of that patent and its specifications, as will bring him within the provisions of the tenth section of the patent law? Is it such a knowledge or notice as will render his suggestion or allegation that he was the inventor, surreptitious and false, according to the construction I have given to that section? Must actual knowledge be brought home to him of a previous use or patent of the same inventions; or will a legal construction or presumptive knowledge be sufficient? With the interpretation I have adopted of this section of the act, a constructive notice of a preceding patent will not be sufficient for the condemnation of the defendant; to fix the charge of actual falsehood and fraud upon him, actual knowledge must be proved. It is not like the case of a disputed right to property between two purchasers, where, if the first buyer has put his deed on record, he has given all the notice of his title the law requires, and a subsequent purchaser who neglects to make the inquiry at the proper place, will buy at his peril. The case of Odiorne v. Winkley [Case No. 10,432] was a suit brought under the sixth section of the act for the invasion of a patent

right. It is probable, however, that you will make up your opinion respecting the knowledge that Scott had of Delano's inventions from the direct evidence in the cause. It is certain that Scott knew Delano had a patent for improvements in making iron chests, and being about to get a patent himself for the same object, you will judge whether it is not to be presumed that he did inquire, at the patent office, what the improvements of Delano were. In addition to this reasonable presumption, much stronger than the ordinary constructive notice afforded by a recorded instrument, you have evidence that Scott came to Delano's shop as a common smith, having never before been engaged in making iron chests, nor, as far as we know, having ever seen one made; and that, if you are satisfied of the identity of the improvements claimed, the chests of Scott are the same with those he saw made, and assisted in making, in Delano's shop. If this evidence is relied upon, it brings home to Scott the full knowledge of Delano's improvements, and, of course, when he obtained a patent for them for himself, he did it surreptitiously and by false suggestion. (The judge then recapitulated to the jury the prominent parts of the testimony, to show the actual knowledge of the defendant, that the improvements he has patented, were those previously patented by Delano, and that he obtained his knowledge of them in Delano's shop.)

The jury found a verdict for the plaintiff.