Before NEWMAN, Circuit Judge,
dissenting.
The panel majority holds that the factual questions of both intent to deceive and materiality of deceptively withheld information are not subject to the jury right. This is a departure from the established jury right, for materiality and intent are quintessential questions of fact, and have been tried to a jury throughout the nation’s history. There is no basis for removing these factual questions from the jury when the jury is trier of fact. I respectfully dissent from the court’s holding that there is no right to a jury, and that the jury demand can be rejected at the trial court’s discretion.

The Constitution, the Common Law, and Precedent

The panel majority’s holding that there is no right to a jury as to the factual questions of material misrepresentation and deceptive intent is contrary to history, tradition, the Constitution, and precedent. The Seventh Amendment preserves the right to jury trial as it existed at common law. See Laurence H. Tribe, American Constitutional Law 618 (3d ed.1988). The question of whether a patent was obtained *1381 upon “false suggestion” to the granting authority, that is, a material misrepresentation with deceptive intent, was tried to a jury at common law.
This debate concerning the jury right is not new to the Federal Circuit, as this court sought to establish consistent patent law and practice. In In re Lockwood, 50 F.3d 966 (Fed.Cir.1995), this court reviewed the history of jury trials and fraudulent patent procurement, as remedied by the common law writ of scire facias. See Lockwood, 50 F.3d at 974 n. 9 (“The contemporary analog of the writ is thus an action for a declaration of unenforceability due to inequitable conduct....”),- which was vacated when Mr. Lockwood withdrew his jury demand, 515 U.S. 1182, 116 S.Ct. 29, 132 L.Ed.2d 911 (1995). Upon the jury’s finding that patents “have been obtained surreptitiously or upon false suggestion,” the chancery court could cancel patents granted by the Crown, the court sitting in its “ordinary” common law jurisdiction rather than in its “extraordinary” equity jurisdiction. See 3 William Blackstone, Commentaries on the Laws of England 47 (1765-69) (“The ordinary legal court is much more ancient than the court of equity. Its jurisdiction is to hold plean upon a scire facias to repeal and cancel the king’s letters patent, when made against law, or upon" untrue suggestions”); see also, e.g., A Systematic Arrangement of Lord Coke’s First Institute of the Laws of England, 328 n.D (J.H. Thomas ed., London, S. Brooke 1818) (explaining the common law jurisdiction of the court of chancery).
Historically, Justice Story recognized the common law nature of the writ of scire facias when he ordered a jury trial for issues of fact in Ex Parte Wood, 22 U.S. (9 Wheat.) 603, 614-15, 6 L.Ed. 171 (1824) (“[I]t is the opinion of the Court ... that a peremptory mandamus issue to the Judge of the District Court ... that he award a process, in the nature of a scire facias, to the patentees, to show cause why the patent should not be repealed ... and that, if the issue so joined be an issue of fact, then the trial thereof to be by a jury; if an issue of law, then by the Court, as in other eases.”). Issues of fraud, deception, and intent, are traditional jury questions, throughout the nation’s courts, e.g., Forsyth v. Vehmeyer, 177 U.S. 177, 180, 20 S.Ct. 623, 44 L.Ed. 723 (1900) (“Where the state court has decided that the action was for fraud and deceit, and has held that in order to have maintained such action the fraud must have been proved as laid in the declaration, it must be assumed that the verdict and judgment in that action were obtained only upon proof and a finding by the jury of the fact of fraud.”)
The panel majority proposes that because patents were not “examined” in 18th Century England, the common law has no relevance to fraud in patent examination. However, in England the jury would find whether a patent was fraudulently obtained, as part of the proceedings- of the writ of scire facias. See Rex v. Arkwright (Kings Bench 1785) (raising the issues of invalidity due to anticipation, and of misrepresentation). The court charged the jury:
Gentlemen of the jury, .... If the specification, in any part of it, be materially false or defective, the patent is against law, and cannot be supported.'
I have discovered no support for the panel majority’s version of history that in 18th Century England “nearly every defect in a patent resulted from some false representation made by a patentee,” maj. op. at 11, but even if that is correct, it *1382 reinforces, rather than negates, the traditional jury presence, for false statements by a patentee would have been submitted to a jury in 18th Century England.
The common law right was, without quibble, carried into early eases in the United States. See, e.g., Grant v. Raymond, 31 U.S. 218, 240, 6 Pet. 218, 8 L.Ed. 376 (1832) (the trial court “instructed the jury that the patent would not be void on this ground, unless such defective or imperfect specification or description arose from design, and for the purpose of deceiving the public”); Delano v. Scott, 7 F. Cas. 378, 382 (E.D.Pa.1835) (trial court charging the jury that “By the terms of that section, if the specification of the patentee does not contain the whole truth relative to his discovery; or contains more than is necessary, for the purpose of deceiving the public; or if it was not originally discovered by the patentee; or he had surreptitiously obtained a patent for the discovery of another person, judgment shall be rendered for the defendant, and the patent shall be declared void”).
Many Federal Circuit decisions illustrate the jury role in finding disputed facts concerning questions of material withholding and deceptive intent, as well as the ultimate fact of whether these infractions warrant permanent unenforceability of the patent. The panel majority’s statement that “This court has consistently treated inequitable conduct as an equitable defense that may be adjudicated by the trial court without a jury,” maj. op. at 1375, is confusing if not misleading, for the statement on its face is accurate, but the majority then holds that there is no jury right and that the factual issues can be adjudicated and balanced only by a judge, and that there is no right to a jury when such is demanded.
Following are some of this court’s decisions that illustrate jury adjudication, upon jury demand — negating the majority’s position that precedent requires that Agfa’s jury demand can be denied:
Cardiac Pacemakers, Inc. v. St. Jude Medical, Inc., 381 F.3d 1371, 1374 (Fed.Cir.2004) (“The jury found both patents valid, and rejected St. Jude’s charge that the ’288 patent is unenforceable for inequitable conduct during patent prosecution.”); Arlington Indus., Inc. v. Bridgeport Fittings, Inc., 345 F.3d 1318, 1325 (Fed.Cir.2003) (“Finally, the jury found that neither Gretz nor Arlington’s patent attorney had committed inequitable conduct in prosecuting the ’674 patent.”); Abbott Labs. v. Syntron Bioresearch, Inc., 334 F.3d 1343, 1348 (Fed.Cir.2003) (“the jury returned verdicts that Syntron failed to prove by clear and convincing evidence that the claims were anticipated, obvious, invalid due to inventorship error, lacked enablement or written description support, or were unenforceable due to inequitable conduct”); Catalina Lighting v. Lamps Plus, Inc., 295 F.3d 1277, 1283 (Fed.Cir.2002) (“the jury returned a special verdict form stating that: ... neither patent was unenforceable due to inequitable conduct.”);
Juicy Whip, Inc. v. Orange Bang, Inc., 292 F.3d 728, 735 (Fed.Cir.2002) (“The district court submitted the issue of inequitable conduct to the jury .... ”); Upjohn Co. v. Mova Pharma. Corp., 225 F.3d 1306, 1313 (Fed.Cir.2000) (“We review these grounds for their support of the jury’s verdicts of inequitable conduct and unen-forceability.”); Hupp v. Siroflex of America, Inc., 122 F.3d 1456, 1459 (Fed.Cir.1997) (“The jury answered special interrogatories on all disputed issues, and in accordance with these findings the court entered judgment that the D’528 patent is *1383 invalid and not infringed, that the patent is unenforceable due to inequitable conduct in the Patent and Trademark Office”);
Hebert v. Lisle Corp., 99 F.3d 1109, 1112 (Fed.Cir.1996) (“the United States District Court for the Western District of Louisiana, pursuant to jury verdict, entered judgment that the ’940 patent was valid but that it was unenforceable due to inequitable conduct”); Modine Mfg. Co. v. Allen Group, Inc., 917 F.2d 538, 540 (Fed.Cir.1990) (“In the spring of 1989 the case was tried to a jury, which returned special verdicts finding that Allen had failed to prove by clear and convincing evidence that the patent was invalid, or that it was unenforceable for inequitable conduct.”); Lummus Indus., Inc. v. D.M. & E. Corp., 862 F.2d 267, 273 (Fed.Cir.1988) (“In this case the jury, in answer to specific interrogatories, found that a nondisclosed prior art reference, considered upon reexamination of the ’120 patent, was a ‘moderately material’ reference, and that the inventor and his attorneys had been ‘grossly negligent’ in failing to call it to the attention of the Patent Office during original examination. Accepting those findings, the trial court concluded that there was no inequitable conduct.”);
Mainland Indus., Inc. v. Standal’s Patents Ltd., 799 F.2d 746, 747 (Fed.Cir.1986) (The jury returned the verdict in the form of answers to twenty-three interrogatories, and found that the patents in suit were not invalid, were enforceable and infringed) (overruled on other grounds by AC. Aukerman Co. v. R.L. Chaides Const. Co., 960 F.2d 1020, 1038 (Fed.Cir.1992)); Shiley, Inc. v. Bentley Labs., Inc., 794 F.2d 1561, 1564 (Fed.Cir.1986). (“The special verdict included jury findings that ... plaintiff did not commit inequitable conduct before the United States Patent and Trademark Office (PTO)”); Shatterproof Glass v. Libbey-Owens Ford Co., 758 F.2d 613, 626 (Fed.Cir.1985) (“The jury was correctly charged as to the law on enforceability, fraud, and misrepresentation, and that clear and convincing evidence was needed for a finding of intentional misrepresentation or withholding of a material fact from the PTO.”); Trans-World Mfg. Corp. v. Al Nyman & Sons, Inc., 750 F.2d 1552, 1557 (Fed.Cir.1984) (“the jury returned answers to special interrogatories in which it found ... that Trans-World intended to deceive the Patent and Trademark Office”).
As the panel majority correctly points out, findings of deceptive intent often require findings of credibility. Credibility is unequivocally the proAnce of the jury. Reeves v. Sanderson Plumbing Prods., Inc., 530 U.S. 133, 150, 120 S.Ct. 2097, 147 L.Ed.2d 105 (2000) (“ ‘Credibility determinations, the weighing of the evidence, and the drawing of legitimate inferences from the facts are jury functions, not those of a judge.’ ”) (quoting Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 255, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986)). The question of whether the patent applicant intended to deceive the patent examiner is a fact, for which a jury may be demanded.
The decision now offered joins a few cases in which panels of the Federal Circuit diverged from history and the weight of our precedent, as in Gardco Mfg., Inc. v. Herst Lighting Co., 820 F.2d 1209 (Fed.Cir.1987), Paragon Podiatry Lab., Inc. v. KLM Labs., 984 F.2d 1182, 1190 (Fed.Cir.1993), where the panel rejected the right to a jury, and a few other cases. This continuing conflict within our court’s precedent disserves the public, as does the selective citation in this opinion of only Gardco, ignoring the entire body of contrary precedent, and leaving litigants and *1384 trial judges with the burdensome jousting here illustrated.[1] The panel majority misconstrues the Court’s holding in Beacon Theatres, Inc. v. Westover, 359 U.S. 500, 79 S.Ct. 948, 3 L.Ed.2d 988 (1959), where the Court held that factual elements in common with both legal and equitable issues or, in that case, subject to equitable remedy, could not be deprived of the jury right as to the factual aspects. The Court made clear that when there is judicial discretion it “must, wherever possible, be exercised to preserve the jury trial.” Id. at 510-11, 79 S.Ct. 948. In Gardco a panel of this court found that there were no common relevant elements in the specific circumstances of that case. In contrast, in the case at bar where asserted misinformation is charged with being material to patenta-bility and deceptively withheld, these are questions of fact that are directly concerned with both validity and enforceability. Thus the panel majority, in its ruling that the trial judge can always exercise discretion and refuse to try these issues to a jury, misses the point that when there is a jury right as to legal elements, as in Beacon Theatres, there is no discretion to deny the jury right as to factual questions relevant to both the legal and equitable issues. See also, e.g., Cabinet Vision v. Cabnetware, 129 F.3d 595, 600 (Fed.Cir. 1997).

The PTO’s Rule 56

Concern for fraud in obtaining patent rights grew with the growth of technology, as it became apparent that there was an imbalance between the information known to inventors, and the knowledge of patent examiners. See Precision Instrument Mfg. Co. v. Automotive Maintenance Machinery Co., 324 U.S. 806, 65 S.Ct. 993, 89 L.Ed. 1381 (1945). As judicial precedent showed the need, the Patent Office established implementing regulations setting the obligations of patent applicants.
The panel majority further states, maj. op. at 1372, that it need not follow the criteria of the PTO’s rule, 37 C.F.R. § 1.56, as recently revised. That revision was adopted after public hearings, and exploration of extensive experience as well as the needs and balance of patent examination. That revision binds the PTO and, absent sound reason, the Administrative Procedure Act requires this court to follow it uniformly, not selectively in different parts of the same opinion. Compare maj. op. at 1372, where the court endorses the prior version of Rule 56, and op. at 1377, where the court applies the present version.

The Claim Construction Issue

I comment briefly on the claim term “stack” and its application by the majority to a vertical, not a horizontal, array. The panel majority states that “when a stack is tilted more than 45 degrees, it remains a stack because the plates are still arranged in a top-to-bottom fashion. After all, the top of a plate remains its top even when that plate tilts beyond 45 degrees.” Op. at 1376. Perhaps at 45 degrees or even 60 degrees the top of a “stack” is still a “top,” but when the plates are lined up in parallel there is no longer a “top” plate, for the plates are no longer “stacked.”
The claims and the entire descriptive text make clear that the invention is directed to “substantially horizontal” plates that are stacked one upon the other. *1385 When the plates stand vertically — as in the prior art, and apparently in the accused system, there is no top plate. I cannot agree with the panel majority that “stack” is correctly construed to include the vertical alignment of the prior art.

. The panel majority’s characterization of this court's Lockwood decision as "unfortunate” is unfortunate, for Lockwood is on sound foundation. If Lockwood is to be rejected, such a change of precedent requires that the court speak with one voice.