**In re Lawrence B. LOCKWOOD, Petitioner.**

**Misc. No. 394.**

United States Court of Appeals, Federal Circuit.

Jan. 11, 1995.

Order Declining Suggestion for Rehearing In Banc Jan. 11, 1995.

Opinion Dissenting from Denial of In Banc Rehearing filed by Circuit Judge Nies Feb. 7, 1995.

---

Don W. Martens, Joseph R. Re and Paul A. Stewart, Knobbe, Martens, Olson & Bear, Newport Beach, CA, were on the Petition for Rehearing and Suggestion for Rehearing In Banc.

Robert M. Taylor, Jr., Lyon & Lyon, Casta Mesa, CA, was on the response to respondents Petition for Rehearing and Suggestion for Rehearing In Banc.

## ON PETITION FOR REHEARING OF GRANT OF PETITION FOR WRIT OF MANDAMUS

Before MICHEL, Circuit Judge, BENNETT, Senior Circuit Judge, and LOURIE, Circuit Judge.

### ORDER

MICHEL, Circuit Judge.

American Airlines, Inc. (American) petitions for rehearing of our nonprecedential March 11, 1994 order granting Lawrence B. Lockwood's petition for a writ of mandamus, wherein we directed the district court to reinstate Lockwood's jury demand in American's pending action for a declaration that Lockwood's two patents are invalid. Lockwood opposes rehearing.

American also moves for leave to file a reply, with the reply attached, and for a precedential order.

## I. BACKGROUND

### A. *American's Declaratory Judgment Action*

This case began when Lockwood filed a complaint against American alleging that American's computerized reservation system infringed Lockwood's two patents relating to self-service terminals and automatic ticket dispensing systems. Lockwood sought both damages and injunctive relief, and his jury demand was timely made. American raised a number of defenses, including the alleged invalidity of the two patents at issue; in addition, American counterclaimed for a declaration that its activities were noninfringing and, alternatively, that Lockwood's patents are invalid or unenforceable.

After the close of discovery, American moved for summary judgment that its computerized reservation system did not infringe the claims at issue in either of Lockwood's patents. The district court granted American's motion for summary judgment of noninfringement, after which it dismissed the infringement complaint[1] and denied Lockwood's motion to certify its summary judgment decision for immediate appeal pursuant to Fed.R.Civ.P. 54(b). The district court held that, rather than permitting an interlocutory appeal of its judgment as to infringement, it would proceed to consideration of American's prayer for a declaration of patent invalidity,[2] citing the Supreme Court's recent

---

1. The parties' initial submissions on the mandamus petition were not altogether clear as to whether there had also been a dismissal or, instead, merely an entry of a partial summary judgment. The infringement action was, however, dismissed. In any case, the manner in which the district court implemented its decision on infringement does not affect the merits of Lockwood's mandamus petition, as we demonstrate in Section II, *infra*.

2. At least where an infringement suit and a declaratory judgment action coexist, our cases encourage district courts to adjudicate questions of both infringement and validity when both are raised, without reference to the order in which

decision in *Cardinal Chem. Co. v. Morton Int'l, Inc.,* —— U.S. ——, 113 S.Ct. 1967, 124 L.Ed.2d 1 (1993) (infringement and declaratory judgment actions joined).

Finally, on American's motion, the district court struck Lockwood's demand that the issue of validity be tried to a jury. The court concluded that "the remaining claims are equitable in nature [and] the plaintiff [Lockwood] is not entitled to a trial by jury as a matter of right."

### B. *Lockwood's Mandamus Petition*

Following the district court's decision to strike, Lockwood petitioned this court for a writ of mandamus directing the district court to reinstate his jury demand. We issued the writ, reasoning that because "Lockwood's underlying claim for infringement and damages is the basis of the action at the district court" and "[t]he claim for infringement damages and any asserted defenses still exist in the case," Lockwood remained entitled to a jury trial on the factual questions relating to validity.

■ American presents two arguments in its petition for rehearing. American first argues that, because the district court dismissed Lockwood's claim for patent infringement damages, the only claim remaining is American's claim for a declaration of patent invalidity. As American rightly asserts, contrary to erroneous statements in our previous order, the district court will *not* adjudicate the issue of validity as a defense to an existing infringement claim. The infringement claim exists no more. Consequently, the particulars of Lockwood's dismissed

they are raised. *Compare Lindemann Maschinenfabrik GmbH v. American Hoist & Derrick Co.,* 730 F.2d 1452, 1463, 221 USPQ 481, 489 (Fed. Cir.1984) ("[a] district court should decide validity and infringement and should enter a judgment on both issues when both are raised in the same proceeding") (infringement alleged in initial complaint, with counterclaim for declaration of invalidity) *with Stratoflex, Inc. v. Aeroquip Corp.,* 713 F.2d 1530, 1540, 218 USPQ 871, 880 (Fed.Cir.1983) ("[w]hen presented with patent validity and infringement issues, trial courts should ... decide both") (prayer for declaration of invalidity in initial complaint, with counterclaim for infringement).

The Supreme Court has expressed the same general preference. *Sinclair & Carroll Co. v.*

claim can play no part in our determination whether he enjoys a Seventh Amendment right to a jury trial as to validity in American's action for a declaratory judgment. *See, e.g., In re Evangelist,* 760 F.2d 27, 32 (1st Cir.1985) (appellate court refused to consider dismissed claim in determining whether a jury demand should be met, even though the claim might ultimately be reinstated); *Hildebrand v. Board of Trustees,* 607 F.2d 705, 710 (6th Cir.1979) (court suggested that claim for damages that was dismissed on summary judgment should not be considered when determining party's asserted Seventh Amendment right to trial by jury).[3] We no longer rely on the misstatements of our previous order.

■ American further argues that its action for a declaratory judgment is entirely equitable in nature, and that Lockwood therefore enjoys no right to a jury trial under the Seventh Amendment in this case even as to patent validity. But American errs as much with this second argument as it hits the mark with its first. Accordingly, our disposition of Lockwood's petition remains the same, though our rationale differs. Because our original analysis was based upon a misunderstanding of the procedural posture of the case, we vacate our March 11, 1994 order and replace it with the analysis presented below.

## II. DISCUSSION

### A. *Protection of the Right to a Jury By Mandamus*

■ American argues that, as a threshold matter, Lockwood has failed to make the

*Interchemical Corp.,* 325 U.S. 327, 330, 65 S.Ct. 1143, 1145, 89 L.Ed. 1644 (1945) ("There has been a tendency among the lower federal courts in infringement suits to dispose of them where possible on the ground of non-infringement without going into the question of validity of the patent. It has come to be recognized, however, that of the two questions, validity has the greater public importance, and the District Court in this case followed what will usually be the better practice by inquiring fully into the validity of this patent.") (citations omitted).

**3.** Because we accept American's argument on this point, we need not dwell on the many cases American cites in support of it.

extraordinary showing required for mandamus. American maintains that we need not address Lockwood's Seventh Amendment claim at this time, asserting that the error of which Lockwood complains, if it occurred at all, can simply be reviewed on appeal after the entry of a final judgment in the case. While we must begin, as American suggests, with the familiar principle that "the remedy of mandamus is a drastic one, to be invoked only in extraordinary situations," *Allied Chem. Corp. v. Daiflon, Inc.*, 449 U.S. 33, 34, 101 S.Ct. 188, 190, 66 L.Ed.2d 193 (1980), we can pay no less heed to the Supreme Court's Seventh Amendment jurisprudence. As the Court, per Justice Sutherland, once stressed:

> Maintenance of the jury as a fact-finding body is of such importance and occupies so firm a place in our history and jurisprudence that any seeming curtailment of the right to a jury trial should be scrutinized with the utmost care.

*Dimick v. Schiedt*, 293 U.S. 474, 486, 55 S.Ct. 296, 301, 79 L.Ed. 603 (1935). *See also Jacob v. City of New York*, 315 U.S. 752, 752–53, 62 S.Ct. 854, 854–55, 86 L.Ed. 1166 (1942) (Murphy, J.) ("The right of jury trial in civil cases at common law is a basic and fundamental feature of our system of federal jurisprudence which is protected by the Seventh Amendment. A right so fundamental and sacred to the citizen, whether guaranteed by the Constitution or provided by statute, should be jealously guarded by the courts."); *Parsons v. Bedford*, 28 U.S. (3 Pet.) 433, 446, 7 L.Ed. 732 (1830) (Story, J.) ("The trial by jury is justly dear to the American people. It has always been an object of deep interest and solicitude, and every encroachment upon

it has been watched with great jealousy."). Accordingly, "the right to grant mandamus to require jury trial where it has been improperly denied is settled." *Beacon Theatres, Inc. v. Westover*, 359 U.S. 500, 511, 79 S.Ct. 948, 957, 3 L.Ed.2d 988 (1959) (reversing circuit court's refusal to issue writ of mandamus reinstating petitioner's jury demand). As the Court observed in *Dairy Queen, Inc. v. Wood*, it is "the responsibility of the Federal Courts of Appeals to grant mandamus where necessary to protect the constitutional right to trial by jury." 369 U.S. 469, 472, 82 S.Ct. 894, 897, 8 L.Ed.2d 44 (1962).

The cases that American cites to the contrary, *First National Bank v. Warren*, 796 F.2d 999 (7th Cir.1986), and *In re Don Hamilton Oil Co.*, 783 F.2d 151 (8th Cir.1986), are unavailing. In *Hamilton*, the Eighth Circuit declined to issue a writ of mandamus ordering a jury trial on the issue of back wages under the Fair Labor Standards Act, 29 U.S.C. § 217 (1988). The court, in a brief per curiam opinion, noted that the three circuit courts to consider this question on the merits had held that an action based on section 217 entails no Seventh Amendment right to a jury trial. 783 F.2d at 151–52. In light of the decisions of the other circuits adverse to Hamilton's position, as well as what it termed "the questionable nature of the legal issue presented," *id.* at 152, the court denied Hamilton's petition without prejudice. Unlike the court in *Hamilton*, we are asked to evaluate the petitioner's right to a jury trial on the factual questions relating to patent validity,[4] a right that *is* protected by the Seventh Amendment when those

---

4. "While the ultimate question of patent validity is one of *law*, the § 103 condition [i.e., obviousness] ... lends itself to several basic *factual* inquiries." *Graham v. John Deere Co.*, 383 U.S. 1, 17, 86 S.Ct. 684, 694, 15 L.Ed.2d 545 (1966) (citation omitted) (emphasis added). It is, of course, beyond peradventure that the trier of fact must answer the *Graham* inquiries relating to "(1) the scope and content of the prior art; (2) the differences between the prior art and the claims at issue; (3) the level of ordinary skill in the art at the time when the invention was made; and (4) objective evidence of nonobviousness." *Specialty Composites v. Cabot Corp.*, 845 F.2d 981, 989, 6 USPQ2d 1601, 1607 (Fed.Cir.1988). Consequently, "[t]hese factual findings underlying the legal conclusion of obviousness are re-

viewed under the 'clearly erroneous' standard," while "the ultimate legal conclusion of obviousness is scrutinized as a matter of law." *Id.*, 6 USPQ2d at 1606–07.

Indeed, the inquiry into obviousness is but one component of the ultimate legal conclusion of validity *vel non*, which itself turns on additional underlying questions of fact. These include anticipation, *Atlas Powder Co. v. E.I. du Pont De Nemours & Co.*, 750 F.2d 1569, 1573, 224 USPQ 409, 411 (Fed.Cir.1984), prior public use or sale, *U.S. Envtl. Prods. v. Westall*, 911 F.2d 713, 715, 15 USPQ2d 1898, 1900 (Fed.Cir.1990), and the sufficiency of a specification's disclosure, *Utter v. Hiraga*, 845 F.2d 993, 998, 6 USPQ2d 1709, 1714 (Fed.Cir.1988).

questions arise in a paradigmatic patent infringement suit. *Patlex Corp. v. Mossinghoff,* 758 F.2d 594, 603, 225 USPQ 243, 250 (Fed.Cir.1985). The scant support *Hamilton* offers for American's position cannot stand against *Beacon Theatres* and *Dairy Queen.*

The Seventh Circuit's holding in *First National* offers American no more support than does *Hamilton;* in fact, it supports Lockwood. In *First National,* the court declined to issue a writ of mandamus ordering a jury trial on the issue of disgorgement in an action alleging unjust enrichment. The court undertook a detailed analysis of *Beacon Theatres, Dairy Queen,* and the cases cited therein, concluding that mandamus is an appropriate remedy for the wrongful denial of the right to a jury trial where (a) the legal and equitable claims to be tried rest on a common factual foundation, and (b) a prior judgment on the equitable claim(s) *might* foreclose the legal claim by issue or claim preclusion. 796 F.2d at 1002–04. Because there was *"no possibility* of issue or claim preclusion" in the case, the court denied First National's petition. *Id.* at 1006 (emphasis added). Unlike the petitioner in *First National,* Lockwood may confront issue-preclusive effects from a bench trial on American's claim of unenforceability; such effects, if they occur, are injuries "not easily repaired on appeal." *First National,* 796 F.2d at 1003. Thus, the Seventh Circuit's approach in *First National,* far from supporting American's position, militates in favor of issuing the writ in this case.

We acknowledge that to review the district court's decision to strike Lockwood's jury demand by means of a pre-judgment mandamus petition "presents all the vices of an interlocutory appeal." *Id.* at 1001. We nonetheless conclude, along with a number of our sister circuits, that the teachings of *Dairy Queen* and *Beacon Theatres* regarding the propriety of mandamus to cure a wrongful denial of the right to trial by jury are beyond cavil. *Nissan Motor Corp. v. Burciaga,* 982 F.2d 408, 408 (10th Cir.1992) ("[M]andamus is appropriate relief when it is necessary to protect the right to a jury trial.") (citing *Dairy Queen* ); *Allegheny Int'l, Inc. v. Allegheny Ludlum Steel Corp.,* 920 F.2d 1127, 1134 (3d Cir.1990) (same); *Mondor v. U.S. Dist. Court,* 910 F.2d 585, 585–86 (9th Cir.1990) (same); *Maldonado v. Flynn,* 671 F.2d 729, 731 (2d Cir.1982) (citing *Beacon Theatres* ); *Filmon Process Corp. v. Sirica,* 379 F.2d 449, 450–51, 153 USPQ 440, 440 (D.C.Cir.1967) (citing both *Dairy Queen* and *Beacon Theatres* ). Accordingly, rather than defer resolution of Lockwood's Seventh Amendment claim until he takes an appeal from a final judgment in the district court, we determine now whether the court improperly struck his jury demand.

### B. *Lockwood's Right to a Jury*

#### 1. *The Framework for Assessing Seventh Amendment Claims*

The Seventh Amendment to the United States Constitution declares that "[i]n suits at common law ... the right of trial by jury shall be preserved...." The thrust of the Amendment was to preserve the right to jury trial as it existed in 1791; indeed, for a time the appropriate rules of the common law as they existed in 1791 were the sole measure of "the scope and meaning of the Seventh Amendment." *Dimick,* 293 U.S. at 476, 55 S.Ct. at 297; *cf. Thompson v. Utah,* 170 U.S. 343, 350, 18 S.Ct. 620, 622–23, 42 L.Ed. 1061 (1898) (using same test for scope of Sixth Amendment jury rights). It is now well settled, however, that the constitutional right to a jury trial extends beyond the bounds set by the common law forms of action existing at the time of the Amendment's adoption. *Curtis v. Loether,* 415 U.S. 189, 193–94, 94 S.Ct. 1005, 1007–08, 39 L.Ed.2d 260 (1974). The Court, through Mr. Justice Story, established the basic principle in 1830:

The phrase "common law," found in [the Seventh Amendment], is used in contradistinction to equity, and admiralty and maritime jurisprudence.... By common law, [the Seventh Amendment's framers] meant what the constitution denominated in the third article "law;" not merely suits, which the common law recognized among its old and settled proceedings, but suits in which legal rights were to be ascertained and determined, in contradistinction to those where equitable rights alone were recog-

nized, and equitable remedies were administered; or where, as in admiralty, a mixture of public law, and of maritime law and equity, was often found in the same suit. . . . In a just sense, the amendment then may well be construed to embrace all suits, which are not of equity and admiralty jurisdiction, whatever may be the peculiar form which they may assume to settle legal rights.

*Parsons,* 28 U.S. (3 Pet.) at 445–46. *Accord Chauffeurs Local No. 391 v. Terry,* 494 U.S. 558, 564, 110 S.Ct. 1339, 1344, 108 L.Ed.2d 519 (1990) (quoting *Parsons* ). In short, any adjudication of a legal, as opposed to an equitable, right falls within the scope of the Amendment. *Tull v. United States,* 481 U.S. 412, 417, 107 S.Ct. 1831, 1835, 95 L.Ed.2d 365 (1987) (Seventh Amendment "require[s] a jury trial on the merits in those actions that are analogous to 'Suits at common law.' "). For example, the Seventh Amendment embraces the adjudication of a legal right created by statute, even where that right has no precursor among the suits and actions known to the common law. *Id.* It is, of course, a simpler matter to state the Amendment's scope in the abstract than to mark out its boundaries with precision in a given case.

██ To determine whether a particular action resolves legal or equitable rights, we examine both the nature of the issues involved and the nature of the remedy sought. Specifically, the test for statutory actions involves two steps:

First, we compare the statutory action to 18th–century actions brought in the courts of England prior to the merger of the courts of law and equity. Second, we examine the remedy sought and determine whether it is legal or equitable in nature.

*Chauffeurs,* 494 U.S. at 565, 110 S.Ct. at 1345 (quoting *Tull,* 481 U.S. at 417–18, 107 S.Ct. at 1835–36); *see Ross v. Bernhard,* 396 U.S. 531, 538 n. 10, 90 S.Ct. 733, 738 n. 10, 24 L.Ed.2d 729 (1970).[5] Thus, if a particular action entails either the adjudication of legal rights, *Tull,* 481 U.S. at 425, 107 S.Ct. at 1839, or, alternatively, the implementation of legal remedies, *Curtis,* 415 U.S. at 195, 94 S.Ct. at 1008–09, the district court must honor a jury demand to the extent that disputed issues of fact concerning those rights and remedies require a trial.[6]

We proceed to analyze Lockwood's Seventh Amendment claim within this framework, concluding that he is entitled to a jury trial as a matter of right in this case. Our decision preserves, as it must, the patentee's ability to compel a jury trial on the factual questions relating to patent validity.

## 2. The Nature of Declaratory Judgment Actions

██ The Declaratory Judgment Act, passed in 1934, ch. 512, 48 Stat. 955 (codified as amended at 28 U.S.C. §§ 2201–02 (1988)), created an action unknown at common law.[7]

5. A third component comes into play in the Seventh Amendment inquiry when a claim that is legal in nature asserts a public right. The Court has cautioned that the Seventh Amendment does not automatically entitle a party to a jury trial if Congress can and has assigned adjudication of the legal claim concerning such public right exclusively to an administrative agency. *Granfinanciera, S.A. v. Nordberg,* 492 U.S. 33, 42 n. 4, 109 S.Ct. 2782, 2790 n. 4, 106 L.Ed.2d 26 (1989) (assignment to bankruptcy court). However, as "[n]o one disputes that an action for [a declaration of patent invalidity] may properly be brought in an Article III court," this limitation on Seventh Amendment protection "does not affect our analysis." *Chauffeurs,* 494 U.S. at 565 n. 4, 110 S.Ct. at 1345 n. 4 (distinguishing *Granfinanciera* ). In other words, assuming *arguendo* that patents confer purely public rights, litigation concerning those patent rights in Article III courts comes within the protection provided by the Seventh Amendment.

6. It is important to note that the Court, in *Tull,* expressly repudiated the contention "that *both* the cause of action *and* the remedy must be legal in nature before the Seventh Amendment right to a jury trial attaches." 481 U.S. at 421 n. 6, 107 S.Ct. at 1837 n. 6 (emphasis added). The inquiry is not a mechanical one, and the steps in our analysis are not in the nature of necessary and sufficient conditions. "Our search," the Court held, "is for a single historical analog, taking into consideration the nature of the cause of action and the remedy as two important factors." *Id.* at 422 n. 6, 107 S.Ct. at 1838 n. 6.

7. The roots of the remedy actually stretch back to Roman law of the pre-classical period. **Edwin M. Borchard, Declaratory Judgments** 87 (2d ed.1941). Maturing in the Civil Law of the Middle Ages, *id.* at 90–101, the modern English declaratory judgment action, developed in Chancery in the late nineteenth century, was modeled on that of Scotland. *Id.* at 125–31. *See also*

10A Charles A. Wright, Arthur R. Miller & Mary Kay Kane, Federal Practice and Procedure § 2752 (2d Ed.1983). Designed particularly to assist potential litigants unable to settle their rights and liabilities through then-existing procedures, an action for "declaratory relief is *sui generis* and is as much legal as equitable." **Borchard,** *supra* note 7, at 26–28, 239. Indeed, from the Act's passage in 1934 until the merger of law and equity in the federal system in 1938, declaratory judgment actions were heard on both the law and the equity sides of the federal courts. *See, e.g., United States ex rel. Guest v. Perkins,* 17 F.Supp. 177 (D.D.C.1936) (law side); *Texas Co. v. Wilkinson,* 21 F.Supp. 771 (E.D.La.1937) (equity side). This has led a number of courts to remark that declaratory judgments are *neither* legal nor equitable, rather than *both. See, e.g., Gulfstream Aerospace Corp. v. Mayacamas Corp.,* 485 U.S. 271, 284, 108 S.Ct. 1133, 1140–41, 99 L.Ed.2d 296 (1988); *Hartford Fin. Sys., Inc. v. Florida Software Servs.,* 712 F.2d 724, 727 (1st Cir.1983); *American Safety Equip. Corp. v. J.P. Maguire & Co.,* 391 F.2d 821, 824 (2d Cir.1968). The variety of formulations should not, however, distract one from the basic point: declaratory judgment actions are, for Seventh Amendment purposes, only as legal or equitable in nature as the controversies on which they are founded. *See* Fed. R.Civ.P. 57 ("Declaratory Judgments"); *Simler v. Conner,* 372 U.S. 221, 223, 83 S.Ct. 609, 611, 9 L.Ed.2d 691 (1963) ("The fact that the action is in form a declaratory judgment case should not obscure the essentially legal nature of the action.").

Importantly, the Supreme Court has followed this principle even where, as here, the prayer for a declaration is joined with a request for injunctive relief. *Beacon Theatres,* 359 U.S. at 511, 79 S.Ct. at 957. In *Beacon Theatres,* the declaratory judgment plaintiff prayed for both a declaration that its contracts with movie distributors did not violate the antitrust laws, and an injunction preventing the defendant from bringing an

antitrust suit based on those contracts. *Id.* at 502–03, 79 S.Ct. at 952–53. The Court required a jury trial on the antitrust issues on Seventh Amendment grounds, reasoning as follows:

> [I]f Beacon would have been entitled to a jury trial in a treble damages suit against Fox it cannot be deprived of that right merely because Fox took advantage of the availability of declaratory relief to sue Beacon first. Since the right to trial by jury applies to treble damages suits under the antitrust laws ... the Sherman and Clayton Act issues on which Fox sought a declaration were essentially jury questions.

*Id.* at 504, 79 S.Ct. at 953. *See also American Safety Equip.,* 391 F.2d at 824 (to assess Seventh Amendment claim, "courts have looked to the basic nature of the suit in which the issues involved would have arisen if Congress had not created the Declaratory Judgment Act."). Because the declaratory judgment action is itself neither legal nor equitable, the historical inquiry required by the Seventh Amendment takes as its object the nature of the underlying controversy. To assess Lockwood's right to a jury trial in the context of American's prayer for a declaration that Lockwood's patents are invalid, we must therefore determine how patent validity was adjudicated prior to merger and absent the declaratory judgment procedure.

### 3. *The Adjudication of Patent Validity*

Before the passage of the Declaratory Judgment Act in 1934, a party concerned that its present or future activities might give rise to patent infringement liability had no legal or equitable procedure to test the validity of the patent at issue. *Zenie Bros. v. Miskend,* 10 F.Supp. 779, 781, 25 USPQ 153, 155 (S.D.N.Y.1935) ("It is said that a suit by a private party who has no patent himself to declare a competitor's patent void is without precedent. The charge is true."); **Borchard** at 802–06; Note, *Federal Jurisdiction Over Declaratory Judgment Proceedings in Patent Cases,* 45 **Yale L.J.** 1287, 1289 (1936).

George W. Pugh, *The Federal Declaratory Remedy: Justiciability, Jurisdiction and Related Problems,* 6 Vand.L.Rev. 79, 79–80 (1952) ("Although it is quite true that from time immemorial Anglo–American courts of equity had afforded what

amounted to declaratory relief in narrowly restricted areas (such as the action to quiet title), there was no concept, even in equity, of a *general* declaratory action.").

The worried party could only wait for the patentee to bring an infringement suit and raise the patent's invalidity as an affirmative defense.[8] Patent validity simply was not litigated in isolation from an infringement claim.

As we noted in *Arrowhead Indus. Water, Inc. v. Ecolochem, Inc.*, patent owners could threaten infringement suits without ever bringing them, engaging "in a *danse macabre*, brandishing a Damoclean threat with a sheathed sword." 846 F.2d 731, 735, 6 USPQ2d 1685, 1688 (Fed.Cir.1988). Where the patentee *had* initiated a suit for infringement and subsequently decided to withdraw the claim prior to trial, the alleged infringer had no way to force the patentee to revive the infringement claim so as to allow for a determination of validity. *Leach v. Ross Heater & Mfg.*, 104 F.2d 88, 91, 41 USPQ 558, 560–61 (2d Cir.1939). The only suit an accused infringer faced with the threat of an infringement action could bring was an action in state court for unfair competitive practices—namely, the patentee's bad faith attempts to destroy the party's business with groundless threats of infringement suits. *See, e.g., Racine Paper Goods Co. v. Dittgen*, 171 F. 631 (7th Cir.1909); *A.B. Farquhar Co. v. National Harrow Co.*, 102 F. 714 (3d Cir.1900). But this action, even if successful, produced no ultimate decision on the question of validity, and thus fell short of what a declaratory judgment action for invalidity would eventually offer. *Zenie Bros.*, 10 F.Supp. at 782, 25 USPQ at 156; *Emack v. Kane*, 34 F. 46 (C.C.N.D.Ill.1888).

 American maintains its declaratory judgment action against Lockwood in order to test the validity of Lockwood's patents. Insofar as the validity of the patents is adjudicated, American's action resembles nothing so much as a suit for patent infringement in which the affirmative defense of invalidity has been pled, and Lockwood's right to a jury trial must be determined accordingly.[9] The primary difference be-

---

**8.** Invalidity is currently a statutorily specified affirmative defense. 35 U.S.C. § 282(2)–(3) (1988). It has long been a defense in the case law. *See, e.g., Evans v. Chambers*, 8 F.Cas. 837, 837–38 (C.C.D.Pa.1807) (No. 4,555).

**9.** In other words, "[o]ur search ... for a single historical analog, taking into consideration the nature of the cause and the remedy as two important factors," *Tull*, 481 U.S. at 422 n. 6, 107 S.Ct. at 1837 n. 6, has produced one satisfactory analog—namely, a suit for patent infringement in which the affirmative defense of invalidity has been pled.

The British writ of *scire facias*, while it may at first appear to be a closer analog to the case at bar, was brought by the king or in his name and was used to attack fraudulently obtained patents. The Supreme Court, per Justice Miller, reviewed the use of this writ to repeal patents in *United States v. American Bell Telephone Co.*, 128 U.S. 315, 9 S.Ct. 90, 32 L.Ed. 450 (1888). That history was as follows:

Charters and patents authenticating grants of personal privileges were in the earlier days of the English government made by the crown. They were supposed to emanate directly from the king, and ... the power of revoking them, so far as they could be revoked at all, was in the king, and was exercised by him as a personal privilege. This mode of revoking patents, however, seems to have fallen into disuse; and the same end was attained by the issue of writs of *scire facias*, in the name of the king, to show cause why the patents should not be repealed or revoked.

*Id.* at 360, 9 S.Ct. at 94. More specifically, as the Supreme Court noted in *Ex parte Wood*, a *scire facias* issued at common law "to repeal patents which have been obtained surreptitiously, or upon false suggestion." 22 U.S. (9 Wheat.) 603, 609, 6 L.Ed. 171 (1824). *Accord Mowry v. Whitney*, 81 U.S. (14 Wall.) 434, 439, 441, 20 L.Ed. 858 (1871). The contemporary analog of the writ is thus an action for a declaration of unenforceability due to inequitable conduct, not due to invalidity. *See Kingsdown Medical Consultants v. Hollister Inc.*, 863 F.2d 867, 876, 9 USPQ2d 1384, 1392 (Fed.Cir.1988) (in banc) (finding of inequitable conduct justified only where "the involved conduct, viewed in light of all the evidence ... indicate[s] sufficient culpability to require a finding of intent to deceive"), *cert. denied*, 490 U.S. 1067, 109 S.Ct. 2068, 104 L.Ed.2d 633 (1989).

Assuming, *arguendo*, that a writ of *scire facias* to repeal a patent is the closest 18th century analog to American's action for a declaration of patent invalidity, the result in this case remains the same. As Blackstone noted, "the remedy to repeal [a] patent is by a writ of *scire facias* in chancery." 3 **Commentaries** \*261; *accord* 5 **John Comyns, A Digest of the Laws of England** 274–75 (Samuel Rose ed., London, A. Strahan 4th ed. 1800) ("A *scire facias* for repealing a patent may be sued in *Chancery*."). Chancery, however, exercised both legal and equitable powers: "The court of chancery is either ordinary, as a court of common law, or extraordinary, as a court of equity." 3 **A Systematic Arrangement of Lord Coke's First Institute of the Laws of England** 328 n.D (J.H. Thomas ed., London, S.

tween American's action and the infringement suit that would formerly have been required for an adjudication of validity is that the parties' positions here have been inverted,[10] and such an inversion cannot operate to frustrate Lockwood's Seventh Amendment rights. *Beacon Theatres,* 359 U.S. at 504, 79 S.Ct. at 953; *Owens–Illinois, Inc. v. Lake Shore Land Co.,* 610 F.2d 1185, 1189 (3d Cir.1979) ("If the declaratory judgment action does not fit into one of the existing equitable patterns but is essentially an inverted law suit—an action brought by one who would have been a defendant at common law—then the parties have a right to a jury."); *James v. Pennsylvania General Ins. Co.,* 349 F.2d 228, 230 (D.C.Cir.1965) ("The right to jury trial in a declaratory judgment action depends ... on whether the action is simply the counterpart of a suit in equity—that is, whether an action in equity could be maintained if declaratory judgment were unavailable—or whether the action is merely an inverted lawsuit."); *Johnson v. Fidelity & Casualty Co.,* 238 F.2d 322, 324–25 (8th Cir. 1956); *Hargrove v. American Cent. Ins. Co.,* 125 F.2d 225, 228 (10th Cir.1942); *Pacific Indemnity Co. v. McDonald,* 107 F.2d 446, 448 (9th Cir.1939).[11]

Brooke 1818); 1 **William Holdsworth, A History of English Law** 449–50 (6 ed. 1938) ("We have seen that Chancery had always possessed some common law jurisdiction; and that that jurisdiction continued to exist after the common law courts had become distinct tribunals ... because of the close connexion which the Chancery had with the issue of original writs, and with the subsequent proceedings on some of these writs."). Moreover, it was in this ordinary, or common law, part of chancery that the writ of *scire facias* to repeal a patent was originated. **Coke's First Institute** at 328 n.D; **Holdsworth** at 452. The ordinary part of chancery was severely limited in one noteworthy particular: "it [had] no power to summon a jury." **Coke's First Institute** at 328 n.D. Thus, in a *scire facias* raising genuine issues of material fact, the proceeding in chancery was suspended pending a determination by a jury summoned in the Court of King's Bench, the main law court. As Lord Coke wrote in his *Fourth Institute,*

> "If the parties descend to issue, this court (the Chancery) cannot try it by jury, but the Lord Chancellor ... delivereth the record by his proper hands into the King's Bench to be tried there ... and after trial had, to be remanded into the Chancery, and there judgment to be given."

**Holdsworth** at 452 (quoting **Coke, Fourth Instit.** 80). A proceeding to repeal a patent by the writ of *scire facias* was, with respect to the factual issues raised therein, a legal, rather than an equitable, affair, thereby entitling the parties to a jury as of right. *Cf. Hollister v. United States,* 145 F. 773, 780–83 (8th Cir.1906) (judgment in a *scire facias* for a forfeited recognizance reversed and remanded for a jury trial, one having been denied defendants in violation of the Seventh Amendment); **Theodore F. Plucknett, A Concise History of the Common Law** 392 n. 2 (5th ed. 1956) ("There seem no grounds for the suggestion ... that there is anything 'equitable' about *scire facias.*").

10. Our analogy to an inverted action for patent infringement finds support among a variety of commentators. *See, e.g.,* 5 **Donald S. Chisum, Patents** § 20.03[4][c][vi] at 20–428 n. 109 (suit for declaratory judgment of invalidity "is in substance an infringement suit with the parties initially reversed"); 6A **James W. Moore et al., Moore's Federal Practice** ¶ 57.20 at 57–213 ("A declaratory action brought by the accused infringer is for the purpose of securing a judicial determination of plaintiff's immunity from the operation of the patent laws—not to assert rights provided by those laws.... The issues sought to be adjudicated are precisely the same as in an infringement suit[.]").

The Supreme Court's recent decision in *Cardinal* is not to the contrary. In *Cardinal,* the Court reviewed and rejected our practice of "routinely vacating declaratory judgments regarding patent validity following a determination of noninfringement." —— U.S. at ——, 113 S.Ct. at 1971. The Court held that the affirmance of a district court's finding of noninfringement does not, by itself, moot the question of validity. *Id.* at ——, 113 S.Ct. at 1978. Thus, for purposes of mootness, "[a] party seeking a declaratory judgment of invalidity presents a claim independent of the patentee's charge of infringement." *Id.* at ——, 113 S.Ct. at 1975. Viewed, however, from the perspective of Article III's jurisdictional requirement of a case or controversy, the two claims are intimately related: "If ... a party has actually been charged with infringement of the patent, there is, *necessarily,* a case or controversy adequate to support jurisdiction of a complaint, or a counterclaim, under the [Declaratory Judgments] Act." *Id.*

11. Numerous commentators have recommended this "inverted lawsuit" approach to the particular quandaries of the Seventh Amendment historical analysis as applied to declaratory judgment actions. **Borchard** at 400; George B. Fraser, *Jury Trials in Declaratory Judgment Actions,* 52 **Iowa L.Rev.** 609, 617 (1967); Fleming James, *Right to a Jury Trial in Civil Actions,* 72 **Yale L.J.** 655, 685–86 (1963); John C. McCoid, *Procedural Reform and the Right to Jury Trial: A Study of Beacon Theatres, Inc. v. Westover,* 116 **U.Pa. L.Rev.** 1, 20 (1967); Zachary Shimer, Comment, *Jury Trials in Declaratory Relief Actions: The*

#### 4. The Patentee's Right to a Jury Trial at Common Law

As we have demonstrated, the Seventh Amendment preserves to Lockwood the same right to a jury trial on the factual questions relating to validity in a declaratory judgment action that he would have enjoyed had the validity of his patents been adjudicated in a suit for patent infringement according to eighteenth-century English practice.

In eighteenth-century England, allegations of patent infringement could be raised in both actions at law and suits in equity. 2 **Joseph Story, Commentaries on Equity Jurisprudence** §§ 930–34, at 236–39 (photo. reprint 1988) (13th ed. 1886); 5 **Moore** ¶ 38.11[5]–[6]. Because an action at law for damages could not obviate the need for perpetual litigation over future acts of infringement nor ascertain the full extent of the injury done to one's interests by past acts of infringement, courts of equity gave a patentee the option of pursuing injunctions and accountings against alleged infringers. 2 **Story** at §§ 932, 933. The choice of forum and remedy, and thus of the method of trial, was left with the patentee. Nineteenth-century American practice followed the same basic pattern. *Marsh v. Seymour*, 97 U.S. 348, 349, 24 L.Ed. 963 (1877) ("Owners of a patent ... may seek redress for the unlawful use of the improvement which it secures, in the Circuit Court, by a suit at law or in equity, at their option...."); *Wise v. Grand Ave. Ry. Co.*, 33 F. 277, 278 (C.C.W.D.Mo. 1888) ("It is now settled that a patentee may sue either at law or in equity, according as the relief demanded is of a legal or equitable nature."). If the patentee sought only damages, the patentee brought an action at law; in such a case, the defense of invalidity was tried to the jury, assuming that a jury had been demanded. *Battin v. Taggart*, 58 U.S. (17 How.) 74, 85, 15 L.Ed. 37 (1854); *Wood v.*

*Underhill,* 46 U.S. (5 How.) 1, 5–6, 12 L.Ed. 23 (1847). However, if the patentee facing past acts of infringement nevertheless sought *only* to enjoin future acts of infringement, the patentee could only bring a suit in equity, and the defense of invalidity ordinarily would be tried to the bench. *Root v. Railway Co.,* 105 U.S. 189, 205–06, 26 L.Ed. 975 (1881).[12] Under both English and American practice, then, it was the patentee who decided in the first instance whether a jury trial on the factual questions relating to validity would be compelled.

We cannot, consistent with the Seventh Amendment, deny Lockwood that same choice merely because the validity of his patents comes before the court in a declaratory judgment action for invalidity rather than as a defense in an infringement suit. Lockwood is entitled to have the factual questions relating to validity in this case tried to a jury as a matter of right.

#### C. American's Counterarguments

American maintains that its action for a declaratory judgment of invalidity is entirely equitable in nature, and thus provides Lockwood no grounds to assert that he has been wrongfully deprived of a jury trial. American does not, however, cite a single eighteenth-century English suit in equity where, with the alleged infringer as plaintiff, the court adjudicated the validity of a patent. Instead, American cites a number of cases for the proposition that "[t]he courts are unanimous ... in holding that there is no right to trial by jury in an action seeking only a declaration of patent invalidity and unenforceability." In addition, American broadly asserts that "an action for declaratory relief is ordinarily equitable in nature," and that Lockwood's Seventh Amendment claim may be disposed of accordingly. We consider each of these arguments in turn, concluding that both are deeply flawed.

*Right Exists, but Under What Circumstances?*, 6 **UCLA L.Rev.** 678, 682, 692 (1959); John M. Townsend, Comment, *Right to Trial by Jury in Declaratory Judgment Actions,* 3 **Conn.L.Rev.** 564, 597–98 (1971).

12. In 1790, before the adoption of the Seventh Amendment in 1791, the patent statute in this country provided only for the award of damages in an action at law, with the right to a trial by jury. *See Root,* 105 U.S. at 191–92; 5 **Chisum** § 20.02. The patentee's right to seek an injunction in non-diversity federal suits was not added to the patent statute until 1819. *See Root,* 105 U.S. at 192; 5 **Chisum** § 20.02[1].

### 1. Declaratory Judgment Decisions

American maintains that the absence of the right to a jury trial in an action for a declaratory judgment of invalidity has already been settled in a number of cases. We discuss these cases briefly.[13]

American relies primarily on two cases from the Ninth Circuit. In *Shubin v. United States Dist. Court,* 313 F.2d 250, 136 USPQ 405 (9th Cir.), *cert. denied,* 373 U.S. 936, 83 S.Ct. 1539, 10 L.Ed.2d 690 (1963), the Ninth Circuit concluded that, because the defendant patentee sought only injunctive relief in its counterclaim of infringement, the alleged infringer's action for a declaratory judgment of invalidity could be tried to the bench. Because the parties had stipulated to the fact that no infringement had yet occurred, the court limited its holding to the "peculiar pleadings of this case, as modified by its admissions and stipulations." *Id.* at 252, 136 USPQ at 406. In short, no claim for damages could have been brought. Applying *Beacon Theatres,* the court reasoned as follows:

> The defendants seek only a permanent injunction against *threatened* infringement. This is not a legal issue. Defendants' only remedy would be in equity.

*Id.* at 251, 136 USPQ at 405–06 (emphasis in original). The court focused, as we have, on the sort of action the defendant patentee could have brought at common law to raise the issues presented in the case. The patentee's counterclaim for a permanent injunction against future infringement, paired with its stipulation to the absence of any claim for infringement damages, convinced the court that the issues in the case were purely equitable ones. Likewise, in *Anti–Monopoly, Inc. v. General Mills Fun Group,* 611 F.2d 296, 204 USPQ 978 (9th Cir.1979), a trademark case, the court focused on the fact that only injunctive and declaratory claims and counterclaims remained to be adjudicated, concluding that the action was equitable. In neither *Shubin* nor *Anti–Monopoly,* however, did the Ninth Circuit address whether an action for a declaratory judgment of invalidity standing alone entitles the defendant patentee to a jury trial on the factual questions relating to validity as a matter of right. Neither of the cases stands for the broad proposition America would have us draw from them.

American also relies on two cases from the Second Circuit. In *Beaunit Mills, Inc. v. Eday Fabric Sales Corp.,* 124 F.2d 563, 565, 52 USPQ 196, 198 (2d Cir.1942), the Second Circuit faced the question whether the district court's order striking the defendant's jury demand was final for purposes of appeal. After dismissing the appeal as interlocutory, the court went on in *dicta* to ponder the merits of the defendant patentee's claim that it had been wrongfully denied a jury trial. While expressing some doubt on the question, the court suggested that, given the "incidental" nature of the patentee's claims, the Seventh Amendment question could best be resolved according to the principle that "equity having assumed jurisdiction should go on to afford complete relief." *Id.* at 566, 52 USPQ at 199.[14] The Supreme Court, referring to the doctrine that equity may determine incidental legal rights in order to afford complete relief, has since made it clear "that no such rule may be applied in the federal courts." *Dairy Queen,* 369 U.S. at 470, 82 S.Ct. at 896.[15] *See also Kennedy v. Lakso Co.,* 414 F.2d 1249, 1252 (3d Cir.1969) (patent infringement case) ("As a result of the decisions [in *Beacon Theatres* and *Dairy*

---

**13.** One case cited by American, *Filmon Process Corp.,* 379 F.2d at 451–52, involved a claim for injunctive relief for patent infringement, not an action for a declaratory judgment of invalidity. It has nothing to teach on the question we consider here.

**14.** *Cf. Root,* 105 U.S. at 205 (Patent Act of 1870 "proceeds upon the idea that the court of equity having acquired jurisdiction for the purpose of administering the equitable relief [against alleged infringement] sought by the bill, may determine directly and for itself, in the same proceeding, all questions incidental to the exercise of its jurisdiction, notwithstanding they may be questions affecting legal rights and legal titles."); *Cochrane v. Deener,* 94 U.S. 780, 782–83, 24 L.Ed. 139 (1876) (patentee is not compelled to sue at law to establish the validity of his patent in that forum as a condition precedent to obtaining equitable relief).

**15.** *Dairy Queen* thus overrules *Cochrane* and *Root,* albeit *sub silentio,* to the extent that they rely on this principle of equity.

*Queen* ], the doctrine that an action which seeks both damages and equitable relief is predominantly equitable and therefore may not be tried to a jury, has been reversed."); McCoid, *Procedural Reform, supra* note 11, at 5–6 (same). *Beaunit,* offering little more than a suggestion that the Supreme Court has since repudiated, offers American nothing at all.

In *Diematic Mfg. Corp. v. Packaging Indus.,* 516 F.2d 975, 186 USPQ 241 (2d Cir.), *cert. denied,* 423 U.S. 913, 96 S.Ct. 217, 46 L.Ed.2d 141 (1975), as in *Beaunit,* the court considered whether a district court order was final for purposes of appeal—in this case, an order staying arbitration. In making its determination, the Second Circuit stated that an action "is to be considered equitable for [these] purposes unless the equitable relief sought can be characterized as 'merely incidental.'" *Diematic,* 516 F.2d at 978–79, 186 USPQ at 244 (quoting *Standard Chlorine, Inc. v. Leonard,* 384 F.2d 304, 309 (2d Cir. 1967)). While the general policy against allowing interlocutory appeals justified the presumption that the action was equitable in *Diematic,*[16] in this case the policies underlying the right to a trial by jury require just the opposite approach. *See Dairy Queen,* 369 U.S. at 473 n. 8, 82 S.Ct. at 897 n. 8 ("It would make no difference if the equitable cause clearly outweighed the legal cause.... As long as any legal cause is involved the jury rights it creates control.") (quoting *Thermo–Stitch, Inc. v. Chemi–Cord Processing Corp.,* 294 F.2d 486, 491 (5th Cir.1961)). Because the holding of *Diematic* was animated by policy concerns quite contrary to those of the Supreme Court's Seventh Amendment jurisprudence, we decline to pattern our decision in this case after it.

Finally, American argues that two early district court decisions concerning the right to a jury trial in declaratory judgment actions under the patent laws support its position in this court. Both *Hall v. Kish,* 11 F.R.D. 292, 88 USPQ 548 (N.D.Ohio 1951),

and *Brody v. Kafka,* 73 USPQ 469 (S.D.N.Y. 1947), involved an action for a declaratory judgment of invalidity and noninfringement; in neither case did the defendant patentee counterclaim for infringement damages, though both defendants made timely jury demands. In both cases, the district court concluded that, given the plaintiff's request for injunctive relief and the plaintiff's failure to counterclaim for damages, the issues involved were equitable and should thus be tried to the bench. First, because they are the decisions of district courts, *Hall* and *Brody* can at most persuade rather than bind us. Second, while we concede that these cases involve actions nearly indistinguishable from American's action against Lockwood, we conclude that their holdings have clearly been vitiated by both *Beacon Theatres,* 359 U.S. at 504, 79 S.Ct. at 953, and *Dairy Queen,* 369 U.S. at 472–73, 82 S.Ct. at 896–97, and thus decline to follow them. We also note that in the more recent case of *Minnesota Automotive, Inc. v. Stromberg Hydraulic Brake & Coupling Co.,* the district court, citing both the contrary decision in *Brody* and the Supreme Court's subsequent decision in *Beacon Theatres,* came to the same conclusion regarding a defendant patentee's Seventh Amendment right to a jury trial as we come to today. 167 USPQ 165, 166 (D.Minn.1970).

## 2. *Nature of Declaratory Relief*

American's second major argument against Lockwood's right to a jury trial in this case focuses on what it maintains is the invariably equitable nature of declaratory judgment actions.

American asserts, for example, that its declaratory judgment action is most analogous to an equitable bill *quia timet,* and that declaratory judgment actions are inherently equitable. American relies primarily on the Supreme Court's decision in *Great Lakes Dredge & Dock Co. v. Huffman,* 319 U.S. 293, 300, 63 S.Ct. 1070, 1074, 87 L.Ed. 1407

16. If equitable, the order would not have been immediately appealable according to the doctrine of *Enelow v. New York Life Ins. Co.,* 293 U.S. 379, 55 S.Ct. 310, 79 L.Ed. 440 (1935), and *Ettelson v. Metropolitan Life Ins. Co.,* 317 U.S. 188, 63 S.Ct. 163, 87 L.Ed. 176 (1942). The

Supreme Court overruled the *Enelow Ettelson* doctrine after *Diematic* was decided. *Gulfstream Aerospace Corp. v. Mayacamas Corp.,* 485 U.S. 271, 287, 108 S.Ct. 1133, 1142, 99 L.Ed.2d 296 (1988).

(1943), to support both these propositions. In *Great Lakes,* the Court reviewed a challenge to the constitutionality of the Louisiana unemployment compensation program, a challenge initiated in the district court as a declaratory judgment action. The specific question before the Court in *Great Lakes* was whether "considerations which have led federal courts of equity to refuse to enjoin the collection of state taxes, save in exceptional cases, require a like restraint in the use of the declaratory judgment procedure." *Id.* at 299, 63 S.Ct. at 1073. Analogizing to the discretion of the courts in suits *quia timet,* the Court held that, having been "[c]alled upon to adjudicate what is essentially an equitable cause of action, the district court was as free as in any other suit in equity to grant or withhold relief upon established equitable principles." *Id.* at 300, 63 S.Ct. at 1074. *Great Lakes* does not, as American suggests, stand for the proposition that declaratory judgment actions are always, or even usually, equitable for Seventh Amendment purposes. No Seventh Amendment issue whatever arose in the case.[17]

▆▆▆ Contrary to American's assertions, it does not appear that an alleged infringer could have used a bill *quia timet* to challenge patent validity in a court of equity. We have not been informed of any such cases by American. Bills *quia timet* were used in actions such as controversies relating to property title, *Holland v. Challen,* 110 U.S. 15, 20, 3 S.Ct. 495, 497–98, 28 L.Ed. 52 (1884), or attempts to cancel private instruments, *Di Giovanni v. Camden Fire Ins. Ass'n,* 296 U.S. 64, 68, 56 S.Ct. 1, 3, 80 L.Ed. 47 (1935). Bills *quia timet* were generally appropriate if there was a danger that a defense at law might be prejudiced or lost if not tried immediately. *Di Giovanni,* 296 U.S. at 68, 56 S.Ct. at 3. Equity could also entertain a bill *quia timet* to appoint a receiver to protect some interest, to require security, or to compel a debtor to discharge a

debt. *See generally* 2 **Story** §§ 825–51, at 156–71. It is clear, however, that the bill *quia timet* has nothing to teach us about Lockwood's right to a jury trial in this case, an inversion of an infringement damages suit.

American also stresses that all suits for a declaratory judgment of invalidity that were brought after the passage of the Declaratory Judgments Act in 1934 but before the merger of law and equity in the federal system in 1938 were brought as bills in equity. American cites the following cases as examples of suits including a request for declaratory relief, brought in equity, in that four-year period: *E.W. Bliss Co. v. Cold Metal Process Co.,* 102 F.2d 105, 41 USPQ 342 (6th Cir.1939); *Derman v. Gersten,* 22 F.Supp. 877 (E.D.N.Y.1938); *Duro Test Corp. v. Welsbach Street Lighting Co. of Am.,* 21 F.Supp. 260 (D.Del.1937); *Petersime Incubator Co. v. Bundy Incubator Co.,* 34 USPQ 251 (S.D.Ohio 1937); *Cromwell Novelty Corp. v. Carp,* 36 USPQ 413 (S.D.N.Y.1937); *Lionel Corp. v. De Filippis,* 15 F.Supp. 19 (E.D.N.Y. 1936); *Mitchell & Weber, Inc. v. Williamsbridge Mills, Inc.,* 14 F.Supp. 954, 32 USPQ 506 (S.D.N.Y.1936); and *Ladenson Co. v. Overspred Stoker Co.,* 89 F.2d 242 (7th Cir. 1937). American can rely on these cases only to show the mere fact that declaratory judgments were sought in courts of equity before the merger of law and equity, a fact not in dispute. None of the cases American cites discuss whether equity was the only proper forum or whether Seventh Amendment rights were at issue.

In sum, the cases American cites either focus on the presence of a request for injunctive relief and the absence of a request for monetary damages or involve issues other than the litigants' Seventh Amendment rights. What none of the cases discuss is a common law cause of action whereby an al-

---

**17.** The same is true of the other Supreme Court cases American cites for the proposition that "declaratory relief is ordinarily equitable in nature." All the cases American cites concern the discretionary nature of the decision to grant declaratory relief in a particular equitable cause of action rather than the Seventh Amendment right to a jury trial. *See Samuels v. Mackell,* 401 U.S.

66, 70–71, 91 S.Ct. 764, 766–67, 27 L.Ed.2d 688 (1971); *Abbott Lab. v. Gardner,* 387 U.S. 136, 155, 87 S.Ct. 1507, 1519, 18 L.Ed.2d 681 (1967); *Public Affairs Assocs. v. Rickover,* 369 U.S. 111, 112, 82 S.Ct. 580, 581–82, 7 L.Ed.2d 604 (1962); *Eccles v. Peoples Bank,* 333 U.S. 426, 431, 68 S.Ct. 641, 644, 92 L.Ed. 784 (1948).

leged infringer could call the patentee into court for an adjudication of a patent's validity. And only evidence of such a common law cause of action would support the position American takes in this case.

### III. CONCLUSION

We conclude that a suit for a declaratory judgment of invalidity is more comparable to a lawsuit for patent infringement than to any historical equitable action. Prior to the Declaratory Judgments Act, an alleged infringer had no action in equity specifically to challenge the validity of a patent and obtain an adjudication thereon. Because a lawsuit for patent infringement could be maintained in a court of law, patent validity was an issue that, if raised, could be decided in a court of law, in contradistinction to an issue that could be decided only in a court of equity, such as fraud in obtaining the patent. Because patent validity is not purely an equitable issue, and because the pending declaratory judgment action is most comparable to an inversion of a patent infringement lawsuit, Lockwood is entitled under the Seventh Amendment to trial by jury in this declaratory judgment action which is being pursued by American to determine validity of his patents.

Accordingly,

IT IS ORDERED THAT:

(1) The court's March 11, 1994 order granting Lockwood's mandamus petition is vacated.

(2) American's petition for rehearing is granted.

(3) American's motion for leave to file a reply is granted.

(4) Lockwood's petition for writ of mandamus is granted. The district court is directed to reinstate Lockwood's jury demand.

(5) American's letter request for a precedential order deciding the petition for writ of mandamus is granted.

1. In the fiscal years 1992–1994, 163 of 274 patent trials were tried to a jury. In fiscal year 1994, 70% of patent trials were tried to juries. 1994 Preliminary Annual Report of the Director

(6) American's alternative request for reissue of the March 11, 1994 order in precedential form is dismissed as moot.

### ORDER

#### Jan. 11, 1995

A suggestion for rehearing in banc having been filed by the respondent in this case, and a response thereto having been invited by the court and filed by the petitioner,

UPON CONSIDERATION THEREOF, it is

ORDERED that the suggestion for rehearing in banc be, and the same hereby is, DECLINED.

Dissenting opinion from order denying rehearing *in banc* filed by Circuit Judge NIES in which Chief Judge ARCHER and Circuit Judge PLAGER joined.

NIES, Circuit Judge.

It is rare for patent litigation to present an appellate court with only constitutional issues. This case is that rarity. By a petition for mandamus, a patentee sought an order for a jury trial on a declaratory judgment counterclaim which seeks to have a patent declared invalid. The merits of the patent are not before us. A panel of this court holds that the Seventh Amendment guarantees a jury trial on that issue. The extent to which Seventh Amendment rights apply in a patent infringement suit has not been addressed by the Supreme Court in this century. Bench trials in patent cases became the norm after the Patent Act of 1870, the statute which gave equity courts the power to award common law damages. Act of July 8, 1870, ch. 230, § 55, 16 Stat. 198. In *Blonder–Tongue Lab. v. University of Illinois Found.*, 402 U.S. 313, 336 n. 30, 91 S.Ct. 1434, 1447 n. 30, 28 L.Ed.2d 788 (1971), the Supreme Court noted that in the three year period spanning 1968–1970, only 13 of 382 patent cases going to trial were jury trials. More than half such suits, however, are now tried to juries.[1] No more important nor

of Administrative Office of the United States Courts, Table C–4 (available from the Administrative Office's Statistics Division); Annual Report of the Director of the Administrative Office

contentious an issue arises in patent law jurisprudence than the appropriate role of juries in patent litigation.[2]

I do not question that a right to a jury trial adheres in a suit for damages for infringement of a patent under the current statute.[3] However, saying such an overall right exists tells us nothing about which *issues* must be decided by a jury upon demand of a litigant and which *issues* are for the judge to decide. *Ross v. Bernhard*, 396 U.S. 531, 538, 90 S.Ct. 733, 738, 24 L.Ed.2d 729 (1970), holds, "The Seventh Amendment question depends on the nature of the issue to be tried rather than the character of the overall action."

The panel order pronounces that an invalidity defense is a jury issue in a customary infringement suit and that this "right" remains available in a declaratory judgment action seeking a declaration of invalidity. However, if no "right" exists to begin with, it cannot carry over to the declaratory judgment action.

I disagree with the *Lockwood* order respecting the right to have a jury decide the issue of invalidity—or underlying facts—for the following reasons:

1. *Public rights:* The validity of a patent involves public rights not private rights. No Seventh Amendment jury rights adhere to a determination of public rights.

2. *Historical test:*

 A. In 1791, a plaintiff sued in equity to cancel an invalid patent in England.

 B. A declaratory judgment action to invalidate a patent is not the flipside of a common law infringement suit for damages.

3. *Policy:* The issue of validity is a question of law. Further, it is an issue necessitating resolution of underlying fact issues by the judge, not the jury, to ensure a correct legal determination and uniformity of decisions.

## I. Patents Involve Public Rights

In *Granfinanciera, S.A. v. Nordberg*, 492 U.S. 33, 109 S.Ct. 2782, 106 L.Ed.2d 26 (1989), the Supreme Court stated: "The Seventh Amendment protects a litigant's right to a jury trial only if a cause of action is legal in nature and it involves a matter of 'private right.'" *Id.* at 42 n. 4, 109 S.Ct. at 2790 n. 4. Originally, the concept of "public rights," in contrast to "private rights," was limited to litigation where the government was a party. *Northern Pipeline Constr. v. Marathon Pipe Line*, 458 U.S. 50, 69, 102 S.Ct. 2858, 2870, 73 L.Ed.2d 598 (1982). The concept was expanded to litigation where the government was not a party in *Thomas v. Union Carbide Agric. Prod.*, 473 U.S. 568, 586, 105 S.Ct. 3325, 3335–36, 87 L.Ed.2d 409 (1985), and in *Granfinanciera*, 492 U.S. at 54, 109 S.Ct. at 2796–97.

This court has held that the issue of validity of a patent involves *public rights*, not merely *private rights*. As stated in *Patlex Corp. v. Mossinghoff*, 758 F.2d 594, 604 (Fed. Cir.1985), "[T]he grant of a valid patent is primarily a public concern." *See also Joy Technologies, Inc. v. Manbeck*, 959 F.2d 226, 228 (Fed.Cir.), *cert. denied*, —— U.S. ——, 113 S.Ct. 90, 121 L.Ed.2d 52 (1992). In *Patlex*, the patentee had brought an infringement suit in which he asked for a jury trial. The defendant pleaded invalidity. A week before the scheduled trial, and with the consent of the trial judge, the defendant success-

of the United States Courts (temp. ed. 1993), Table C–4; Annual Report of the Director of the Administrative Office of the United States Courts, Table C–4 (1992).

**2.** *See e.g.* Second Annual Judicial Conference of the United States Court of Appeals for the Federal Circuit, 104 F.R.D. 207, 370–88 (1984) (Panel Discussion: "Should There Be Limitations on Use of Juries in Patent Cases?"); *See also* First Annual Judicial Conference of the United States Court of Appeals for the Federal Circuit, 100 F.R.D. 499, 653–62 (1983); Eleventh Annual Judicial Conference of the United States Court of

Appeals for the Federal Circuit, 153 F.R.D. 177, 236–52 (1993) (Panel Discussion: "To What Extent Must Juries be Used in Patent Cases?"); The Advisory Commission on Patent Law Reform, *A Report to the Secretary of Commerce*, pp. 107–110 (August 1992).

**3.** 35 U.S.C. § 281 states in part:

A patentee shall have remedy by civil action for infringement of his patent.
35 U.S.C. § 284 states in part:
When the damages are not found by a jury, the court shall assess them.

fully petitioned the Patent and Trademark Office (PTO) to undertake reexamination of the patent. The district court stayed the suit awaiting reexamination. The patentee sought to enjoin the Commissioner from proceeding with reexamination, challenging the constitutionality of the reexamination procedure, which was added to the patent statute in 1980. 35 U.S.C. §§ 301–307. The patentee asserted, *inter alia,* that the reexamination procedure deprived him of a Seventh Amendment right to have a jury determine the validity of his issued patent. As correctly noted, the administrative reexamination would allow the PTO to hold the patent invalid and cancel it without affording him a jury trial. 35 U.S.C. § 307(a). While review of such administrative action may be obtained in this court directly or via a district court before such appeal, no jury trial is afforded in any part of these proceedings. 35 U.S.C. § 306.

The *Patlex* panel noted that although validity is normally raised in litigation between two parties, "the threshold question usually is whether the PTO, under the authority assigned to it by Congress, properly granted the patent. At issue is a right that can only be conferred by the government." *Patlex,* 758 F.2d at 604. The panel further reasoned:

The reexamination statute's purpose is to correct errors made by the government, to remedy defective governmental (not private) action, and if need be to remove patents that should never have been granted. . . . A defectively examined and therefore erroneously granted patent must yield to the reasonable Congressional purpose of facilitating the correction of governmental mistakes. This Congressional purpose is presumptively correct, and *we find that it carries no insult to the Seventh Amendment and Article III.*

*Id.* (emphasis added).

Underlying the concept of "public rights" is the power of Congress to define a public grant which need not include a jury right to determination of its efficacy.

[C]ongress can [not] withdraw from judicial cognizance any matter which, from its nature, is the subject of a suit at the

common law. . . . At the same time there are matters, involving public rights, which may be presented in such form that the judicial power is capable of acting on them, and which are susceptible of judicial determination, but which congress may or may not bring within the cognizance of the courts of the United States, as it may deem proper.

*Murray's Lessee v. Hoboken Land and Improvement Co.,* 59 U.S. (18 How.) 272, 284, 15 L.Ed. 372 (1856); *Granfinanciera,* 492 U.S. at 52, 109 S.Ct. at 2795–96; *Northern Pipeline,* 458 U.S. at 67, 69 n. 23, 102 S.Ct. at 2869, 2870 n. 23; *Atlas Roofing Co. v. Occupational Safety and Health Review Comm'n,* 430 U.S. 442, 451 n. 8, 97 S.Ct. 1261, 1267 n. 8, 51 L.Ed.2d 464 (1977); *see also Thomas,* 473 U.S. at 587, 105 S.Ct. at 3336. As stated in *Northern Pipeline:*

[W]hen Congress creates a statutory right, it clearly has the discretion, in defining that right, to create presumptions, or assign burdens of proof, or prescribe remedies; it may also provide that persons seeking to vindicate that right must do so before particularized tribunals created to perform the specialized adjudicative tasks related to that right. Such provisions do, in a sense, affect the exercise of judicial power, but they are also incidental to Congress' power to define the right that it has created.

*Northern Pipeline,* 458 U.S. at 83, 102 S.Ct. at 2878 (footnote omitted).

A patent grant is of this nature. The patent grant and accompanying rights are purely statutory, albeit based on Article I, section 8 of the Constitution which is "both a grant of power and a limitation." *Graham v. John Deere Co.,* 383 U.S. 1, 5, 86 S.Ct. 684, 687, 15 L.Ed.2d 545 (1966).

Moreover, Congress has placed patent validity determinations within the cognizance of both Article III and Article I trial tribunals. Reexamination by the PTO with review by the Board of Patent Appeals and Interferences of the PTO is only the most recent empowerment outside Article III. By specific amendment of the Tariff Act of 1930, the International Trade Commission also must

pass on the validity of patents in connection with unfair trade practices in the importation of goods. Trade Act of 1974, P.L. 93–618, tit. III, ch. 4, § 341, 88 Stat. 1978, 2053 (codified at 19 U.S.C. § 1337(c) (1988)).

These legislative provisions are in accord with the concept of public rights.[4] They are not in accord with a constitutional right to a jury trial on the issue of validity. A litigant cannot have a constitutional right and not have a constitutional right on the same issue. *See* Fleming James, Jr., and Geoffrey C. Hazard, Civil Procedure (3rd Ed.1985) § 8.11 at 450. The panel misreads the holding of *Chauffeurs, Teamsters & Helpers Local No. 391 v. Terry*, 494 U.S. 558, 110 S.Ct. 1339, 108 L.Ed.2d 519 (1990) (*"Teamsters"*) in stating that the public rights limitation has no effect on a jury trial analysis because this case is in an Article III court. The panel states that public rights only apply when Congress has "assigned adjudication of the legal claim concerning such public right *exclusively* to an administrative agency." Majority op. at p. 972 n. 5 (emphasis added).[5] The panel's reasoning would eliminate any problem respecting the public rights issue once a claim can be brought in an Article III court. That rationale cannot explain the *Patlex* case which denied the patentee litigant a right to a jury to determine validity. *Patlex* must be overruled under the panel's reasoning.

I believe that *Patlex* is correct and that *Granfinanciera* controls. A constitutional jury right to determine validity of a patent does not attach to this public grant. Congress could place the issue of validity entirely in the hands of an Article I trial court with particular expertise if it chose to do so. The panel wipes out this option by constitutionalizing jury rights on the issue of validity.

Since Supreme Court precedent holds that the Seventh Amendment does not apply to public rights determinations, and the patent grant involves a public right, the panel's order is in conflict with both the Supreme Court and our precedent.

## II. *Historical Test*

The declaratory judgment action of this appeal fails to present a situation in which historically a party had a *right* to a jury trial. If no public rights issue is involved, a Seventh Amendment right to a jury trial on a statutory claim must meet the following test:

Although "the thrust of the Amendment was to preserve the right to jury trial as it existed in 1791," the Seventh Amendment also applies to actions brought to enforce statutory rights that are analogous to common-law causes of action ordinarily decided in English law courts in the late 18th century, as opposed to those customarily heard by courts of equity or admiralty. *Curtis v. Loether*, 415 U.S. 189, 193 [94 S.Ct. 1005, 1007–08, 39 L.Ed.2d 260] (1974).

The form of our analysis is familiar. "First, we compare the statutory action to 18th–century actions brought in the courts of England prior to the merger of the courts of law and equity. Second, we examine the remedy sought and determine whether it is legal or equitable in nature." *Tull v. United States*, 481 U.S. 412, 417–18 [107 S.Ct. 1831, 1835, 95 L.Ed.2d 365] (1987) (citations omitted). The second stage of this analysis is more important than the first. *Id.*, at 421 [107 S.Ct. at 1837]. If, on balance, these two factors indicate that a party is entitled to a jury trial under the Seventh Amendment, we must decide whether Congress may assign and has assigned resolution of the relevant

---

4. The United States Court of Federal Claims, an Article I court, has long ruled on patent invalidity in suits by a patentee for compensation from the United States for use of a patented invention by a government supplier. This cannot be explained solely on the ground that it involves waiver of sovereign immunity. Congress has taken away a patentee's right to sue the supplier which otherwise entails a right to a jury trial under the panel analysis. 28 U.S.C. § 1498 (1988).

State courts also routinely decide issues of validity in suits by a patentee/licensor for royalties against a licensee. *See Lear, Inc. v. Atkins*, 395 U.S. 653, 675–76, 89 S.Ct. 1902, 1913–14, 23 L.Ed.2d 610 (1960); *Pratt v. Paris Gas Light & Coke*, 168 U.S. 255, 259, 18 S.Ct. 62, 64, 42 L.Ed. 458 (1897).

5. The Supreme Court has never limited the public rights doctrine to such "exclusive" assignment.

claim to a non-Article III adjudicative body that does not use a jury as factfinder. *Granfinanciera*, 492 U.S. at 41–42, 109 S.Ct. at 2790. "The second stage of this analysis [*i.e.*, remedy] is more important than the first." *Id.* Additionally, both steps must be satisfied. *Teamsters*, 494 U.S. at 565, 110 S.Ct. at 1345 ("we examine both the nature of the issues involved and the remedy sought"); *Tull*, 481 U.S. at 417, 107 S.Ct. at 1835 ("the Court must examine both the nature of the action and of the remedy sought"); *Curtis*, 415 U.S. at 195, 94 S.Ct. at 1009 ("a jury trial must be available if the action involves *rights and remedies* of the sort typically enforced in an action at law").

The panel recognizes the two part test (18th Century analog **AND** remedy) announced repeatedly but changes the "and" to "or." The panel states:

> [I]f a particular action entails either the adjudication of legal rights, *Tull*, 481 U.S. at 425 [107 S.Ct. at 1839], or, alternatively, the implementation of legal remedies, *Curtis*, 415 U.S. at 195 [94 S.Ct. at 1009], the district court must honor a jury demand to the extent that disputed issues of fact concerning those rights and remedies require a trial.

Majority op. at p. 972. The panel's holding is unprecedented. The panel's reliance on a footnote in *Tull* to support its truncated jury right analysis is wrong. *See* maj. op. at 972 n. 6. A reading of the entire *Tull* footnote shows that the Court rejected the panel's

position. In *Tull*, the Court repudiated the government's attempt to divide a "Clean Water Act action for civil penalties into a cause of action and a remedy, [ ] analyz[ing] each component as if the other were irrelevant." *Tull* 481 U.S. at 421 n. 6, 107 S.Ct. at 1837 n. 6. By completely disregarding any analysis of the remedy sought in this case, the panel is accomplishing what the Court specifically rejected in *Tull*.[6]

### A. 18th Century English Practice.

The panel asserts that prior to the Declaratory Judgment Act in 1934, "[v]alidity simply was not litigated in isolation from an infringement claim." In fact it was in England *at the time* the Seventh Amendment was adopted. A separate nullification action, similar to the present day declaratory judgment action, could be brought before the English equity court. In England, prior to 1791, anyone could challenge a patent's validity by a *scire facias* writ in equity. *See Mowry v. Whitney*, 81 U.S. (14 Wall) 434, 439–40, 20 L.Ed. 858 (1871); *United States v. Stone*, 69 U.S. (2 Wall) 525, 535, 17 L.Ed. 765 (1864). "The *scire facias* to repeal a patent was brought in chancery where the patent was of record. And though in this country the writ of *scire facias* is not in use as a chancery proceeding, the nature of the chancery jurisdiction and its mode of proceeding have established it as the appropriate tribunal for the annulling of a grant of patent from the government." *Mowry*, 81 U.S. (14 Wall) at 440.[7]

---

**6.** Neither *Dairy Queen, Inc. v. Wood*, 369 U.S. 469, 82 S.Ct. 894, 8 L.Ed.2d 44 (1962) nor *Beacon Theatres, Inc. v. Westover*, 359 U.S. 500, 79 S.Ct. 948, 3 L.Ed.2d 988 (1959) is instructive on what constitutes a common law claim or on what issues in such claim are for the jury. Those cases hold:

1. A common law claim cannot be treated *as subservient to or merely incidental* to an equitable claim; and,
2. An equitable claim cannot be tried *prior to* a common law claim where there are common overlapping issues of fact.

If the facts were tried first to the court on the equitable issue, the court's resolution would preempt the jury decision on the overlapping factual issues, contrary to the jury right of the Seventh Amendment. These two Supreme Court cases merely direct the order of trial, they do not change equitable claims to legal claims. Neither Supreme Court case helps in deciding whether

the *issue* of invalidity is or is not, in whole or in part, for the jury.

Additionally, the panel's indiscriminate use of these two Supreme Court cases leaves a wide path strewn with the carnage of cases declared overruled or obsolete. Neither *Dairy Queen* nor *Beacon Theatres* supports the panel.

In *Cochrane v. Deener*, 94 U.S. 780, 24 L.Ed. 139 (1876), the Court stated that equity courts had independent jurisdiction to adjudicate all patent issues by statute, not that some of the issues were incidental to equitable issues. *In re Don Hamilton Oil Co.*, 783 F.2d 151 (8th Cir. 1986), had nothing to do with the order of trial involving both legal and equitable claims.

**7.** Under the American patent statute in effect in 1791 (Act of April 10, 1790, ch. 7, § 5, 1 Stat. 109, 111), Congress provided private parties with a right to sue for repeal of a patent by proceedings similar to a writ of *scire facias. See, Ex*

The panel acknowledges only one of the three situations in which a writ of *scire facias* was grantable. Majority op. at 974–75 n. 9. Contrary to the panel's view, a *scire facias* could issue for the following reasons:

1. A previous patent had issued on the invention [There was no administrative examination before issuance];

2. Fraud [Inequitable conduct];

3. Unlawful grant [Invalid patent].

*Mowry*, 81 U.S. (14 Wall.) at 439; *Stone*, 69 U.S. (2 Wall.) at 535; 2 William C. Robinson, *The Law of Patents*, § 726 (1890).

The panel also declares that, even if a writ of *scire facias* is the closest 18th Century analog, a party to such a suit could demand a jury trial in a court of equity as a matter of right. Majority op. at 975 n. 9. The "matter of right" in patent cases is an overstatement. Frequently equity courts decided the facts respecting validity themselves or treated juries as advisory, merely to inform the conscience of the court. *Cochrane v. Deener*, 94 U.S. 780, 783, 24 L.Ed. 139 (1876); *see also Johnson v. Harmon*, 94 U.S. 371, 372, 24 L.Ed. 271 (1876); *Van Iderstine v. National Discount Co.*, 227 U.S. 575, 580, 33 S.Ct. 343, 344, 57 L.Ed. 652 (1913); 2 Joseph Story, *Commentaries on the Constitution*, 553 (5th Ed.1891); Fleming James, Jr., *Right to a*

*Jury Trial in Civil Actions*, 72 Yale L.J. 655, 655 (1963).[8]

Since the first part of the test to determine whether the Seventh Amendment requires a jury trial is negated by this English equity action, that should end the inquiry.[9]

### B. *No Damages Remain in the Case.*

The patentee's claim of infringement[10] has been adjudicated in this case. The trial court held that the accused method did not meet the limitations of the claim and granted summary judgment. Thus, all that remains at this stage are the declaratory judgment counterclaim for invalidity and unenforceability. Neither remaining claim carries any right to damages. The panel decision relies solely on the challenge to validity as the basis for the jury right.[11]

The remedy sought in this case is not legal and therefore, on this ground alone, no jury trial is required. The Supreme Court has conclusively and repeatedly stated that the remedy part of the two part test enumerated above is the more important inquiry, *Teamsters*, 494 U.S. at 565 n. 4, 110 S.Ct. at 1345 n. 4; *Granfinanciera*, 492 U.S. at 42, 109 S.Ct. at 2790; *Tull*, 481 U.S. at 421, 107 S.Ct. at 1837; *Curtis*, 415 U.S. at 196, 94 S.Ct. at 1009, yet the panel order finds a right to a jury nonetheless.

*parte Wood*, 22 U.S. (9 Wheat.) 603, 6 L.Ed. 171 (1824) (discussing comparable provision in Patent Act of 1793); *See also United States v. Bell Telephone Co.*, 128 U.S. 315, 9 S.Ct. 90, 32 L.Ed. 450 (1888) (extended discussion of *scire facias* and similar proceedings); *Mowry*, 81 U.S. (14 Wall) at 440; *United States v. Glaxo Group, Ltd.*, 410 U.S. 52, 65, 93 S.Ct. 861, 869, 35 L.Ed.2d 104 (1973) (Rehnquist, J., dissenting). Although writs of *scire facias* issued out of law courts in early American courts, English courts issued such writs in courts of equity. The historical test requires courts to look to English practice in 1791, not American practice. *Granfinanciera*, 492 U.S. at 41–42, 109 S.Ct. at 2790; *Baltimore & Carolina Line, Inc. v. Redman*, 295 U.S. 654, 657, 55 S.Ct. 890, 891, 79 L.Ed. 1636 (1935) ("The right of trial by jury thus preserved is the right which existed under the English common law when the Amendment was adopted."); *Dimick v. Schiedt*, 293 U.S. 474, 476, 55 S.Ct. 296, 296, 79 L.Ed. 603 (1935).

8. Story reports that "Lord Coke supposes that the title *Cancellarius* [Chancellor] arose from his

cancelling (a cancellando) the king's letters-patent, when granted contrary to law, which is the highest point of jurisdiction." 1 Joseph Story, *Commentaries on Equity Jurisprudence*, § 40 (12th Ed.1877).

9. The search for an historical analog is, in any event, complicated by the statutory nature of patent grants. There is no common law patent. Moreover, validity under the Statute of Monopolies (1623) was litigated as a fact question in 1791. Should our search entail looking at the broader question of how an issue of law was litigated?

10. "Infringement" must be understood to mean only that an accused product or method falls within the scope of the claim. Infringement is not a determination of liability. A finding of infringement may be overcome by an affirmative defense.

11. The unenforceability claim is equitable. *Gardco Mfg. v. Herst Lighting Co.*, 820 F.2d 1209 (Fed.Cir.1987).

First, the panel analyzes a declaratory judgment claim here as a reverse infringement suit and attributes the patentee's original claim to damages to the invalidity counterclaim, citing *Beacon Theatres* as authority. However, the panel ignores the reality that the patentee's claim has been dismissed. Alternatively, the panel holds that the presence of a "legal right" issue is sufficient to invoke a right to a jury without a claim for damages.

First, a declaratory judgment action for a declaration of invalidity is not the flip side of an infringement claim nor necessarily the same as an affirmative defense.[12] The latter is limited to the particular claims of the patent asserted in the complaint; a counterclaim may challenge all claims. The issue of infringement or non-infringement is irrelevant to such declaratory judgment claim. The "case or controversy" underlying a declaratory judgment action is the patentee's *threat of suit* against the declaratory plaintiff on the patent. Infringement *vel non* simply is not an issue. As the Supreme Court recently stated: "A party seeking a declaratory judgment of invalidity presents a claim independent of the patentee's charge of infringement." *Cardinal Chem. Co. v. Morton Int'l, Inc.*, ── U.S. ──, ──, 113 S.Ct. 1967, 1975, 124 L.Ed.2d 1 (1993).

A patentee has no possibility of suing for a declaration of validity, the flip side to the declaratory judgment claim presented here. The closest counterpart for a patentee is reexamination in the Patent and Trademark Office (PTO). If a reexamination request is granted, the PTO will review the cited prior art and, if appropriate, issue a certificate upholding the patent over that art. In ordinary patent litigation the patentee receives, at best, a judgment that the patent was not proved invalid.[13]

Second, the panel creates a conflict with all other circuits in upholding a Seventh Amendment right without a damage claim remaining to be tried. *Filmon Process Corp. v.*

*Sirica,* 379 F.2d 449 (D.C.Cir.1967), is dismissed by the panel in a footnote because the case does not involve a declaratory judgment. The panel's rationale is difficult to follow. In denying a mandamus petition, the court in *Filmon* stated: "The record before [the trial judge] does not show that petitioner has any action for damages pending, a prerequisite to a claim that it is being deprived of a right to a jury trial." *Id.* at 451. Similarly in other cases cited to the panel, the circuit courts focused on the demand, or lack thereof, for money damages. *United Transp. Union, Local 74 v. Consolidated Rail Corp.*, 881 F.2d 282, 286 (6th Cir.1989), *vacated on other grounds*, 494 U.S. 1051, 110 S.Ct. 1517, 108 L.Ed.2d 757 (1990), *reaffirmed*, 902 F.2d 36 (6th Cir.1990) ("We hold that the nature of the remedy requested by Local 74, insofar as it prays for compensatory damages, is legal."); *Francis v. Dietrick*, 682 F.2d 485, 487 (4th Cir.1982) ("Withdrawal of the claim for damages left only equitable issues."); *Hildebrand v. Board of Trustees of Michigan State Univ.*, 607 F.2d 705, 708 (6th Cir.1979) ("A key dividing line between law and equity has historically been that the former deals with money damages and the latter with injunctive relief."); *Skippy, Inc. v. CPC Int'l, Inc.*, 674 F.2d 209, 215 (4th Cir.), *cert. denied*, 459 U.S. 969, 103 S.Ct. 298, 74 L.Ed.2d 280 (1982) ("Since [plaintiff] failed altogether to pursue its claim for damages for the alleged fraudulent inducement, it was not prejudiced by the district court's failure to give it a jury trial on a claim not contemplated at trial.").

*Shubin v. United States Dist. Court for S. Cal.*, 313 F.2d 250 (9th Cir.), *cert. denied* 373 U.S. 936, 83 S.Ct. 1539, 10 L.Ed.2d 690 (1963), a case directly on point and relied upon by the trial judge in this case, accords with Supreme Court precedent. In *Shubin*, the court stated: "There is no prayer for damages in any amount. . . . Hence there exists no possibility that damages could be awarded. . . . There is left only an 'equitable

---

**12.** A declaratory judgment for a declaration of noninfringement would mirror an infringement suit. Patents are presumed valid. Therefore, proof of validity forms no part of the patentee's case, unless the defendant raises the issue of invalidity.

**13.** Occasionally a judgment will declare a patent "valid". A patent is born valid and remains so until proven otherwise. The correct ruling is that the alleged infringer did not prove the patent invalid.

cause' before the court below." The lack of damages in *Shubin* controlled the denial of a jury. Again, the truncated test adopted by the opinion makes that consideration irrelevant.[14]

Finally, I have found no Supreme Court case upholding the Seventh Amendment right in civil litigation where damages were not requested. *Teamsters,* 494 U.S. at 563, 110 S.Ct. at 1343 ("they sought, *inter alia,* compensatory damages for lost wages and health benefits"); *Granfinanciera,* 492 U.S. at 36, 109 S.Ct. at 2787 ("Respondent sought to avoid what he alleged were constructively and actually fraudulent transfers and to recover damages, costs, expenses, and interest."); *Tull,* 481 U.S. at 422, 107 S.Ct. at 1838 ("A civil penalty was a type of remedy at common law that could only be enforced in courts of law."); *Curtis,* 415 U.S. at 190 n. 1, 94 S.Ct. at 1006 n. 1 ("petitioner ... sought to recover actual damages as well"); *Ross,* 396 U.S. at 542, 90 S.Ct. at 740 ("In the instant case we have no doubt that the corporation's claim is, at least in part, a legal one. The relief sought is money damages."); *Dairy Queen,* 369 U.S. at 476, 82 S.Ct. at 899 ("insofar as the complaint requests a money judgment it presents a claim which is unquestionably legal"); *Beacon,* 359 U.S. at 504, 79 S.Ct. at 953 ("the right to trial by jury applies to treble damage suits under the anti-trust laws"). Without the pendency of a legal remedy request, petitioner in this case is not denied a constitutional right to trial by jury.

This court's mandamus order in this case creates the type of conflict with other circuits that warrants Supreme Court review.

### III. *Jury Rights on an Issue of Law*

The issue of validity of a patent is an issue of law. *Graham v. John Deere Co.,* 383 U.S. 1, 17, 86 S.Ct. 684, 694, 15 L.Ed.2d 545 (1966) ("[T]he ultimate question of patent validity is one of law, [*Great*] *A. & P. Tea Co. v.*

*Supermarket [Equipment] Corp.,* [340 U.S. 147] at 155 [71 S.Ct. 127 at 131–32, 95 L.Ed. 162 (1950)].") This interpretation of the current statute is in sharp contrast to interpretations of prior statutes under which patent validity was treated as an issue of fact for the jury. *Graver Tank & Mfg. v. Linde Air Prods.,* 336 US. 271, 279, 69 S.Ct. 535, 539, 93 L.Ed. 672 (1949); *Goodyear Tire & Rubber Co. v. Ray–O–Vac Co.,* 321 U.S. 275, 64 S.Ct. 593, 88 L.Ed. 721 (1944); *Tucker v. Spalding,* 80 U.S. (13 Wall.) 453, 20 L.Ed. 515 (1871); *Bischoff v. Wethered,* 76 U.S. (9 Wall.) 812, 19 L.Ed. 829 (1869); *Gill v. Wells,* 89 U.S. (22 Wall) 1, 22 L.Ed. 699 (1874); *Battin v. Taggert,* 58 U.S. (17 How.) 74, 15 L.Ed. 37 (1854); 3 William C. Robinson, *The Law of Patents,* § 1075, (1890). What is the effect of the Supreme Court declaring a particular issue to be an ultimate issue of law? Is it part of the Seventh Amendment right that the underlying factual disputes relevant to the issue of law must be decided by the jury? Or is the entirety of an issue of law including factual disputes, taken from the jury the same as with an equitable issue? Or does the answer depend on the particular issue? No clear answer can be found in Supreme Court precedent, and the circuit court decisions are in conflict respecting the role of a jury in determining patent validity.

The Ninth Circuit held in *Sarkisian v. Winn–Proof Corp.,* 688 F.2d 647 (9th Cir. 1982) (*in banc*), cert. denied, 460 U.S. 1052, 103 S.Ct. 1499, 75 L.Ed.2d 930 (1983), that the issue of validity of a patent is determined as a matter of law by the court, but facts must be found by the jury. If only the legal issue is submitted to the jury, the jury verdict is advisory. The court called for specific factual findings by the jury or by the judge. *Id.* 688 F.2d at 650. Where a district court judge of that circuit made independent findings of fact and conclusions of law after receipt of an advisory verdict, this court rejected the trial court's treatment of the verdict as advisory. *American Hoist & Derrick*

---

14. The panel order likewise dismisses two district court opinions cited by respondents. Majority op. at 978. In those two cases, neither patentee sought damages. Both courts held that the trial would proceed without a jury. A subsequent district court opinion declined to follow *Minnesota Automotive, Inc. v. Stromberg Hydrau-*

*lic Brake & Coupling Co.,* 167 USPQ 165 (D.Minn.1970), which the panel embraces. Criticizing that opinion, another district court stated that it was "unclear exactly what aspect of the case gave rise to [a jury] right." *General Tire & Rubber v. Watson–Bowman Assocs.,* 74 F.R.D. 139, 141 (D.Del.1977).

*v. Sowa & Sons, Inc.,* 725 F.2d 1350, 1361 (Fed.Cir.), *cert. denied,* 469 U.S. 821, 105 S.Ct. 95, 83 L.Ed.2d 41 (1984); *see also Perkin–Elmer v. Computervision,* 732 F.2d 888, 895 n. 5 (Fed.Cir.), *cert. denied,* 469 U.S. 857, 105 S.Ct. 187, 83 L.Ed.2d 120 (1984); *Richardson v. Suzuki Motor Co.,* 868 F.2d 1226, 1234 (Fed.Cir.), *cert. denied,* 493 U.S. 853, 110 S.Ct. 154, 107 L.Ed.2d 112 (1989).[15]

The Seventh Circuit in *Roberts v. Sears, Roebuck & Co.,* 723 F.2d 1324 (7th Cir.1983) (*in banc*) addressed the issue of nonobviousness, one of the three conditions of patentability (novelty and utility being the other two) and declared that issue to be one of law. However, it further held that the factual issues underlying obviousness go to the jury, but that mandatory alternative instructions must be given delineating the particular factual dispute in the case that controls the outcome. Thus, under Seventh Circuit law, the trial court announces the ultimate result in its instructions, dependent upon the jury finding of a particular fact.[16] While this case was cited with approval in one Federal Circuit case, *Structural Rubber Prods. v. Park Rubber Co.,* 749 F.2d 707 (Fed.Cir.1984), unlike the Seventh Circuit this court has not imposed the use of mandatory alternate instructions, and the procedure has not been used, to my knowledge, in any appeal to come to this court. One of the difficulties with mandatory alternative instructions is that a validity decision is likely to require a number of underlying fact findings which would have to be covered by cumbersome instructions setting out various possible combinations of subsidiary facts. While the mandatory alternative instructions procedure separates the law/fact roles of judge and jury, the question remains: Is the fact finding role of a jury a constitutional right with respect to the conditions of patentability?

The Tenth Circuit recognized the ultimate issue of validity to be one of law but held the conditions of patentability, *e.g.,* novelty, utility, nonobviousness, are issues of fact for the jury. *See, e.g., Norfin Inc. v. International Business Machine Corp.,* 625 F.2d 357 (10th Cir.1980), and *Celebrity, Inc. v. A & B Instrument Co.,* 573 F.2d 11 (10th Cir.), *cert. denied,* 439 U.S. 824, 99 S.Ct. 94, 58 L.Ed.2d 117 (1978). Under this analysis, there is no separate judgmental decision for the judge to make. If the jury holds that an invention would have been obvious, the judge is not permitted to review that verdict except for the substantiality of the evidence.

In *Connell v. Sears, Roebuck & Co.,* 722 F.2d 1542, 1547 (Fed.Cir.1983), this court declared that it was not error to give the issue of validity to the jury over a litigant's objection and that the judge maintained control over the issue of law by the court's instructions on the applicable law and by ruling on directed verdict, JNOV (now JMOL) and new trial motions. *Id.* at 1547–48. It was not entirely clear from *Connell* (even in a suit for damages) whether our precedent actually required the validity issue to go to the jury or merely held that it was not reversible error *per se* to ask the jury for a validity/invalidity verdict. However, because of the strong language of *Connell,* and later precedent endorsing jury rights, the right to a jury on validity issues has simply become ingrained without analysis.[17] *In banc* efforts to clarify the issue have been unsuccessful, as this case itself illustrates.[18] This court has tacitly approved instructions and special interrogatories (purportedly under Fed.R.Civ.P. 49(a)) directing juries to decide the ultimate legal issue of validity and subsidiary issues of law (most frequently obviousness). *Perkin–Elmer Corp.,* 732 F.2d at 894–95; *DMI, Inc. v. Deere & Co.,* 802 F.2d 421, 424 (Fed.Cir.1986). Only if the verdict

---

**15.** The creation of this court shifted all patent appeals from the regional circuits to this court.

**16.** Resolution of the factual inquiries outlined in *Graham* does not dictate the answer to the question of obviousness. It merely brings one face to face with a judgmental decision. Does the invention, in light of those facts, satisfy the requirement of nonobviousness within the meaning of 35 U.S.C. § 103?

**17.** *Connell* fails to cite even a single Supreme Court case concerning jury trials.

**18.** *See also Sun Studs, Inc. v. ATA Equip. Leasing, Inc.,* 872 F.2d 978, 984, *reh'g granted in banc,* 882 F.2d 1583; *original opinion reinstated and rehearing in banc declined,* 892 F.2d 73 (Fed. Cir.1989).

does not withstand the stringent standard of Fed.R.Civ.P. 50 may the verdict be overturned.[19] Thus, this court invokes the standard of review applicable to an ultimate issue of fact or an ultimate issue of fact mixed with law and applies it to an ultimate issue of law. Further, a JMOL motion is required to review the judgment, absent plain error. *Biodex Corp. v. Loredan Biomedical, Inc.*, 946 F.2d 850, 854 (Fed.Cir.1991), *cert. denied*, —— U.S. ——, 112 S.Ct. 2957, 119 L.Ed.2d 579 (1992). However, if a verdict loser does not challenge the sufficiency of the evidence, *i.e.*, the presumed facts, but simply the ultimate conclusion of law, is a JMOL required for review of the judgment? Is it not enough to object to giving the legal issue to the jury, contrary to the holding in *Connell* ?

The panel order holding that petitioner is entitled to a jury trial on the factual issues underlying the issue of validity must be read in light of our precedent. Petitioner asked that the jury be given the issue of validity to decide. Our precedent supports this request. *Railroad Dynamics, Inc. v. A. Stucki Co.*, 727 F.2d 1506 (Fed.Cir.1984); *Richardson*, 868 F.2d at 1235. Once the verdict is rendered on the ultimate legal issue, the court will *presume* the jury resolved all facts in favor of the verdict winner. *Perkin–Elmer*, 732 F.2d at 893; *Jurgens v. McKasy*, 927 F.2d 1552, 1557 (Fed.Cir.), *cert. denied*, 502 U.S. 902, 112 S.Ct. 281, 116 L.Ed.2d 232 (1991); *DMI*, 802 F.2d at 425; *But see, Newell*, 864 F.2d 757 (not function of jury to pick and choose among *established* facts relating to obviousness). The instructions need not delineate factual disputes in the case. General instructions, for example, outlining the broad legal standard of *Graham v. John Deere*, 383 U.S. 1, 17, 86 S.Ct. 684, 693, 15 L.Ed.2d 545 (1966), for determining obviousness, bear our imprimatur. *DMI*, 802 F.2d at 425; *Shearing v. Iolab Corp.*, 975 F.2d 1541, 1544 n. 2 (Fed.Cir.1992); *Sjolund v. Musland*, 847 F.2d 1573, 1575–76 (Fed.Cir.

1988). The trial court's ruling on a JMOL motion may be no more than "Denied." *Sjolund*, 847 F.2d at 1576. We do not require a reasoned analysis from the trial judge. Some panel opinions speak of *de novo* review of the legal conclusion after accepting the presumed findings of fact. *Jurgens*, 927 F.2d at 1557. Others reject the *de novo* standard. *Bio–Rad Lab. v. Nicolet Instrument Corp.*, 739 F.2d 604, 607 (Fed.Cir.), *cert. denied*, 469 U.S. 1038, 105 S.Ct. 516, 83 L.Ed.2d 405 (1984). Still others conflate the standard to whether a "reasonable" jury could reach the verdict it rendered. *Sun Studs*, 872 F.2d at 982; *Shearing*, 975 F.2d at 1545; *Richardson*, 868 F.2d at 1235.

The validity/invalidity of a patent is a matter which affects the public, not merely the litigants. Yet, under the confusing jury jurisprudence of this court, the matter can be treated as if only the rights of the litigants were involved. That a reasonable jury could have reached the contrary verdict on the record before us and that verdict would have been accepted under the reasonableness standard is of no consequence. I do not agree with this treatment of an issue of law. In my view, an issue of law has only one possible answer on a given record. At a minimum, the decision on the issue must be reviewed to determine if it is "right" or "wrong," not "reasonable." *See Newell Co.*, 864 F.2d at 762; *Structural Rubber*, 749 F.2d at 718–19.[20]

I can point to no definitive Supreme Court pronouncement respecting a Seventh Amendment right or no right to have a jury decide factual issues underlying an issue of law. However, clearly the touchstone of jury rights is not that a fact dispute underlies the issue to be decided. "[T]he Seventh Amendment was never intended to establish the jury as the exclusive mechanism for factfinding in civil cases." *Atlas Roofing Co. v. Occupational Safety & Health Review Comm'n*, 430 U.S. 442, 451 n. 8, 97 S.Ct.

---

**19.** *Newell Co. v. Kenney Mfg.*, 864 F.2d 757 (Fed. Cir.1988), *cert. denied*, 493 U.S. 814, 110 S.Ct. 62, 107 L.Ed.2d 30 (1989).

**20.** In the *Graham* trilogy of cases, I see no reference to Rule 52(a) nor deference to factual find-

ings by the trial court. Moreover, although fact-intensive inquiries, the Court identified the secondary considerations of long felt need, failure of others, and commercial success as "legal inferences or subtests." *Graham*, 383 U.S. at 35–36, 86 S.Ct. at 702–03.

1261, 1267 n. 8, 51 L.Ed.2d 464 (1977). I glean from *City of St. Louis v. Praprotnik,* 485 U.S. 112, 108 S.Ct. 915, 99 L.Ed.2d 107 (1988) (plurality opinion), and *Kungys v. United States,* 485 U.S. 759, 108 S.Ct. 1537, 99 L.Ed.2d 839 (1988), that the entirety of an ultimate issue of law is taken from the jury. Others read those cases differently.

Similarly, *Bose Corp. v. Consumers Union,* 466 U.S. 485, 104 S.Ct. 1949, 80 L.Ed.2d 502 (1984), speaks of close scrutiny of the evidence by the courts to protect constitutional rights and can be read as so limited. I do not argue that patent rights equate with First Amendment rights. But the determination of patent validity also does not equate with a decision which benefits from the communal wisdom of the jury. It is my understanding that the denomination of an issue as one of law represents a policy decision that a judge is more appropriate than a jury to make the decision. As a matter of policy for reasoned and uniform decisions, this is true of patent validity. The identification and resolution of underlying facts in the case is as important as the judgmental decision. If one presumes, for example, that a jury verdict on the issue means all the *Graham* factors were answered in favor of the verdict winner, the judgmental call is likely to be skewed.

As jury cases are now tried, in accordance with our precedent, the evidence respecting validity of a patent is thrown into the black box of the jury room, and the verdict is returned either valid or invalid. If both parties agree to that procedure, so be it. But where a party objects, I believe that a litigant has a right to a trial court's decision with findings of fact and conclusions of law on the issue of validity. The judge has an essential role to play in a constitutional jury trial. As stated in *Herron v. Southern Pacific Co.:*

> In a trial by jury in a federal court, the judge is not a mere moderator, but is the governor of the trial for the purpose of assuring its proper conduct and of determining questions of law. This discharge of the judicial function as at common law is an essential factor in the process for which the Federal Constitution provides.

283 U.S. 91, 95, 51 S.Ct. 383, 384, 75 L.Ed. 857 (1931). *See also Capital Traction Co. v. Hof,* 174 U.S. 1, 13, 14, 19 S.Ct. 580, 585, 43 L.Ed. 873 (1899). Moreover, only a reasoned decision lays the foundation for meaningful review.

Because our precedent has been read to *require* jury resolution, litigants no longer challenge the propriety of giving the issue of validity to the jury to decide if there is conflicting evidence on underlying facts. By not raising the issue, they must be deemed to have consented even if there is no jury right. This case, which is in the posture of a declaratory judgment for invalidity, presents a sufficiently different setting from prior cases that a litigant could raise the issue without fear of chastisement. We are provided with an opportunity to at least speak definitively on jury rights and procedures. We have thrown away that opportunity once again. I respectfully dissent.